### FRANCES P. GORTON *vs.* JOHN J. SCHOFIELD.

Essex. November 3, 1941. — April 2, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Real Property*, Lateral support. *Easement. Equity Jurisdiction*, Lateral support, Remedy at law.

Upon findings in a suit in equity that at least sixty years before the suit was brought a predecessor in title of the defendant by excavating at the rear of his lot had removed support from adjoining land of a predecessor in title of the plaintiff and had built on his own land a retaining wall to supply the support thus removed, and that the defendant had permitted the wall to fall into disrepair, causing subsidence in the plaintiff's land from time to time, especially after heavy rains, a decree was warranted ordering the defendant to provide adequate support to the plaintiff's land.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated October 7, 1938.

The case was heard by *Forte*, J.

*F. X. Hurley*, for the defendant, submitted a brief.

*F. H. Tarr*, for the plaintiff.

DOLAN, J. This is a bill in equity by which the plaintiff seeks to compel the defendant to rebuild or repair a retaining wall on the defendant's land which provides lateral support to the plaintiff's land. The judge entered an interlocutory decree overruling the defendant's exceptions to the master's report and confirming the same, and a final decree ordering the defendant to "provide adequate support to the plaintiff's land, at the rear thereof, adjoining the retaining wall . . . by strengthening the said retaining wall now existing, or by any other effective means which will provide adequate support to the plaintiff's land . . . [and enjoining the defendant] from doing any acts, or permitting any acts to be done, which will weaken further said retaining wall or in any way deprive the plaintiff's land of its present lateral support." Under the terms of the decree the defendant was further enjoined from removing props and beams supporting a portion of the retaining wall "until permanent support to the plaintiff's land is made," and the defendant was ordered to pay the plaintiff $15 (damages) and costs. The defendant's appeal from the final decree brings the case before us.

Material facts found by the master follow: The plaintiff is the owner of a parcel of land with a dwelling house thereon situated on the southerly side of Middle Street in Gloucester. The lot runs easterly along the street sixty-five and thirty-seven hundredths feet, southerly one hundred one and seventy-six hundredths feet, then westerly eighty-three and twenty hundredths feet and northerly one hundred and sixty-five hundredths feet.[1] The defendant's lot faces on Main Street which runs parallel to Middle Street and the rear of his lot adjoins and abuts the rear of the plaintiff's lot. The defendant's lot extends back from Main Street about one hundred sixty-six feet, the deeds describing it as running back as far as the Gorton lot. The retaining wall is erected on the rear line of the defendant's property and is "constructed entirely upon the Schofield land." The wall is three feet from the plaintiff's boundary line at the

---

[1] Through apparent inadvertent but immaterial error the directions of these bounds were stated incorrectly by the master.

southeast corner of the Gorton lot and coincides with the boundary line at a point two feet from the southwest corner. On the top course of the wall there are five stones which project toward Middle Street. Three of these stones project a few inches over the Gorton line and are used as supports for perpendicular poles which are part of a wire fence constructed on the plaintiff's land along its rear boundary to a jog in the wall.

The wall, of granite construction, is approximately eighty-five feet long and fourteen feet high, and on its top at the easterly part thereof there is a brick wall four feet high and approximately fifty-five feet long. The granite wall is in disrepair and is not sufficiently strong to support the land of the plaintiff without being repaired or properly braced. The plaintiff's land has caved or fallen in, and is cracked to a greater or lesser degree along the entire rear line of her property. Originally the plaintiff's and the defendant's lands were on a "sloping ridge or hill, which sloped southerly from Middle Street down to the sea." The defendant's land, due to excavations, is now level, but the plaintiff's land still slopes down to the retaining wall. The plaintiff's and the defendant's respective lots "were never held by the same ownership."

Prior to 1937 there was standing on the defendant's property a stable built close up against and abutting the retaining wall. This building was erected prior to the year 1880. It was a substantial structure with upright timbers close up against the wall, and the roof of the easterly part of the stable was fastened directly to the wall. This building furnished support to the wall. In 1937, however, this stable was completely demolished, and in the spring of 1938 there was a sinking of the land in the rear of the plaintiff's lot forming a large hole four or five feet deep, ten or twelve wide, extending six or eight feet to a point about four feet from the rear of the plaintiff's house. Later other holes appeared.

To remedy this condition the plaintiff, with the defendant's permission, shored and supported the most unstable part of the wall with wooden timbers and the parties

stipulated that no admissions of liability or waiver were made by so doing. The wall, however, particularly the easterly part, is still unsafe, unstable and in danger of collapse. The master further found that the total amount expended by the plaintiff to the time of the hearing was $15, but that the cost of repair of the wall would be between $1,000 and $1,500. He also found that there had been no damage to the plaintiff's house.

The master found that there "was no evidence establishing the date, when, or the person by whom, this excavation of the defendant's land was made, or when or by whom the wall was built," but he also found on all the evidence and the reasonable inferences therefrom that the excavation had been made by a former owner of the defendant's land (between 1848 and 1876) and that the wall was constructed at that time by the same person to provide support for the plaintiff's land.

The defendant has argued that the finding of the master that the wall was constructed entirely upon the defendant's property is inconsistent with the subsidiary facts found by the master. This contention cannot be sustained. There is nothing inconsistent between that finding and the subsidiary finding that the wall and the rear line of the plaintiff's property coincide. The wall could still be on the defendant's land and be coincident with the boundary line. Moreover, the maps and charts incorporated by reference in the report of the master, which are before us, demonstrate that the wall is on the defendant's land, as found by the master. That he found that three stones on the top course of the wall projected a few inches over the plaintiff's boundary line does not vitiate the general finding under discussion.

The defendant also contends that the findings of the master that the excavation had been made by a former owner of the defendant's land between 1848 and 1876, and that the wall was constructed by that owner to provide support for the plaintiff's land are inconsistent with the subsidiary finding that there was no evidence establishing the date when, or the person by whom, the excavation of

the defendant's land was made or when or by whom the wall was built. Read casually without reference to other subsidiary findings, the finding objected to would appear to be inconsistent with the subsidiary finding just referred to. But the finding objected to did not purport to be a mere conclusion from subsidiary facts fully stated but was declared to be based upon all the evidence. All the evidence is not reported, and it is not stated in the report nor does it show on its face that the ultimate facts found by the master are based solely upon the subsidiary facts found, and we are of opinion not only that the subsidiary facts found considered as a whole are not so inconsistent with the ultimate finding in question that it cannot stand, but also that, read as a whole and properly interpreted, the subsidiary facts support the conclusion that the excavation was made and that the wall was built by a predecessor in title of the defendant to provide lateral support for the plaintiff's land over sixty years prior to the hearing before the master. See *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435; *MacLeod* v. *Davis*, 290 Mass. 335, 339; Rule 90 of the Superior Court (1932).

The decisive question is what are the legal duties and responsibilities of the defendant with relation to the maintenance of the retaining wall built by a predecessor in title in the circumstances before set forth. The law with relation to lateral support is of ancient origin and is firmly established. "The right of an owner of land to the support of the land adjoining is jure naturae, like the right in a flowing stream. Every owner of land is entitled, as against his neighbor, to have the earth stand and the water flow in its natural condition . . . [and] in the case of land, which is fixed in its place, each owner has the absolute right to have his land remain in its natural condition, unaffected by any act of his neighbor; and, if the neighbor digs upon or improves his own land so as to injure this right, may maintain an action against him, without proof of negligence." *Gilmore* v. *Driscoll*, 122 Mass. 199, 201 et seq., and cases cited. *Kronberg* v. *Bulle*, 247 Mass. 325, 328. *Triulzi* v. *Costa*, 296 Mass. 24, 27. See cases cited in 50 Am. L. R. 486 et seq.

This being the basic law, the question in the case at bar
is whether the defendant, the present owner of the land
upon which the excavation was made and the wall built by
a predecessor in title, is bound to maintain the wall in such
condition as to prevent damage to the plaintiff's land.  The
plaintiff has not argued that the structure on her land is in
danger of collapse as a result of the condition of the retain-
ing wall, and hence we are not concerned with any question
relating to the structures thereon.  See, however, *Gilmore*
v. *Driscoll*, 122 Mass. 199, 204, 205.  There seems to be
but little authority upon the precise question under dis-
cussion.  The point does not seem to have been decided
heretofore by this court.  The plaintiff has cited in support
of her position *Lyons* v. *Walsh*, 92 Conn. 18, *Cavanaugh* v.
*Weber*, 11 Ky. Law Rep. 858, and *Foster* v. *Brown*, 48 Ont.
Law Rep. 1.  In the last case cited it appeared that an
excavation had been made upon land by the predecessor
in title of the defendant, and that the former had built a
retaining wall for the purpose of providing support to the
plaintiff's adjoining land; that this wall "got out of repair
and failed to answer the purpose for which it was built"
(page 3), and that from time to time as a result a subsidence
of the plaintiff's land occurred after the defendant became
the owner of the land upon which the wall had been erected,
and the soil fell into the excavation.  The court held, in
substance, that the defendant was responsible for the dam-
age that the plaintiff had sustained, saying, at pages 5–6,
that it saw "no reason why, if a person who is in posses-
sion of land in which there is an excavation which is a
source of danger to the public, although the excavation
was not made by him but by a predecessor in title, is liable
for the consequences of his permitting the dangerous con-
dition to continue, the same rule should not be applied
where a lateral support has been withdrawn by a prede-
cessor in title, and the condition so caused has been per-
mitted to remain and to cause injury to his neighbour, the
owner of the land at the time the injury occurs should
not be answerable for it."  In that case the court pointed
out that the consequences "of holding otherwise would be

that where a land-owner had made an excavation in his
land, and thereby removed the lateral support to which
his neighbour is entitled, but had built a solid retaining wall
to prevent subsidence, which, during his ownership, pre-
vented it, and had then sold his land to another and that
other to others, and, owing to a subsequent owner — it
might well be fifty years after — permitting the retaining
wall to decay and no longer to answer the purpose for which
it was constructed, with the result that his neighbour's
land has subsided, he would be liable to answer in damages
for the injury, and the man whose failure to keep up the
retaining wall was the effective cause of the injury would
go scot free, and that too where the subsidence would not
have occurred if the retaining wall had been kept in repair."
And at page 6, Fry, L.J., expressing his concurrence said,
in part: "I am unable to understand why the failure of a
subsequent owner to provide the necessary support, and a
fortiori where he suffers a retaining wall to decay, is not
equally a continual or continued withdrawal of support
. . . ." See 10 B. R. C. 918, and annotation.

These principles were recognized for the most part in
*Lyons* v. *Walsh*, 92 Conn. 18, but it is true that in that case
the court, while holding that the plaintiff was entitled to
recover damages from a subsequent owner of the servient
land, was of opinion that the equitable relief sought, that
is, that the defendant should restore the wall to its original
condition, should not be granted because the court was not
satisfied that irreparable injury was "clearly. enough dis-
closed to warrant the exercise of so drastic a power."

We have already said, in substance, in *Foley* v. *Wyeth*,
2 Allen, 131, and *Gilmore* v. *Driscoll*, 122 Mass. 199, that
the right to lateral support of soil in its natural state is a
property right which naturally attaches to and passes with
the soil without any grant thereof. We concur in the
reasoning in *Foster* v. *Brown*, 48 Ont. Law Rep. 1, which
we have hereinbefore set forth at some length, and are of
opinion that the burden of providing lateral support to the
plaintiff's land in its natural condition is one of continued
support running against the servient land.

The defendant has argued that the plaintiff's prayer for equitable relief should not have been granted by the judge because she has not shown irreparable damage. We do not sustain that contention. The findings of the master relative to subsidences in the plaintiff's land have already been recited. They have been occurring from time to time. They still occur "especially after heavy rains." It is a reasonable assumption that as time goes on they will continue to occur, and it follows that a mere award of expenses incurred by the plaintiff to the time of the trial would not give her adequate relief. Such an award would not prevent foreseeable future damage resulting from the failure of the defendant to continue to provide lateral support to the plaintiff's land. See *Marcus* v. *Brody*, 254 Mass. 152; *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 109, 110, and cases cited. The only effective remedy that can be afforded the plaintiff and which will put an end to litigation is to require the defendant to conform to the terms of the final decree entered by the judge. See *Simon* v. *Nance*, 45 Tex. Civ. App. 480; Thompson, Real Property, § 559, and cases cited.

*Decree affirmed with costs.*