## THOMAS W. VENNARD *v.* MAE E. MORRISON

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 12-6304-2893

Argued June 1—decided December 14, 1964

*Jules A. Karp,* of Manchester, for the appellant (defendant).

*Anthony J. Gryk,* of Manchester, for the appellee (plaintiff).

KOSICKI, J. This is a suit for damages and for the restoration of lateral support to the plaintiff's land. On the pleadings and the evidence adduced at the trial, the essential issues concerned the settlement of a boundary line dispute and the determination of the rights of the parties in a strip of land, title to which was in controversy, the resolution of this dispute being necessary in order to establish the boundary common to both parties. The court fixed the boundary line, awarded damages and issued an injunction compelling the defendant to construct a wall, replacing a wall removed by her, in order to restore support to the plaintiff's adjacent land in its natural state. From this judgment the defendant has appealed.

The material facts found by the court and not subject to correction are as follows: The plaintiff and defendant are the present owners of adjoining lots of land, lying southerly of Lilley Street in Manchester, that prior to 1912 were part of a larger tract owned by James Trotter. On January 9, 1912, Trotter conveyed to one McCann a lot of land described as follows: North on Lilley Street, 140 feet; east on Summit Street, 70 feet; south on James Trotter land, 110 feet; and west on James Trotter

land, 50 feet.   In November of the same year, Trotter recorded a map of lots which included not only the lot conveyed to McCann but other lots south of Lilley Street and west of Summit Street on the map, hereinafter referred to as the Trotter map. The McCann lot was designated as lot 33.  McCann was a predecessor in title of the defendant.  By deed dated March 1, 1915, Trotter conveyed the lot next westerly of the McCann lot to the plaintiff.   The deed designated this lot as No. 37 on the Trotter map and described it as follows:   Northerly by Lilley Street, Seventy-one and 5/10 (71.5) feet; east by lands of Thomas McCann and James Trotter, Ninety-five and 7/10 (95.7) feet, partly by each; south by land of John Graham, Fifty-three and 4/10 (53.4) feet; and west by land of Joseph McLean. The plaintiff has owned lot 37 continuously to the present time.

In 1915 and at all times thereafter, lot 37 was elevated above lot 33, the natural slope of the land being downward from west to east.  In 1918, a successor in title to McCann, one Van Dyke, in the course of constructing a garage and driveway to Lilley Street, next to his west boundary line, which was the plaintiff's east boundary line, excavated and removed part of the slope and then constructed in the excavated area and along or near the common boundary line a retaining wall which furnished support to the higher ground of the plaintiff west of the retaining wall.  This wall ran southerly from Lilley Street for a distance of about 50 feet, with the northerly 25 to 30 feet exposed.  The garage was set back from Lilley Street about 30 feet, with its northwest corner resting on the retaining wall and its southwest corner about one foot easterly of the wall, as a consequence of which the front of the garage faced slightly toward the retaining wall.  By deed dated November 20, 1924, Van Dyke conveyed to the town

of Manchester a portion of the northeast corner of his lot, thereby rounding out the corner and reducing his frontage by 19.87 feet and leaving, by arithmetical subtraction from his original frontage of 140 feet on Lilley Street, a remainder of 120.13 feet.

In March, 1956, the defendant became the owner of lot 33, excluding the portion conveyed to the town of Manchester, the premises being described in her deed as follows: "Northerly: By Lilley Street, 120.13 feet, more or less; Northeasterly: By an area with a radius of 10 feet and a delta angle of 126° 34′ connecting the southerly line of Lilley Street with the westerly line of Summit Street a distance of 22.09 feet; Easterly: By Summit Street 50.13 feet, more or less; Southerly: by lot No. 34 as shown on a map entitled 'Map of Land of James Trotter, So. Manchester, Conn. showing layout of Lilley Street Scale 1″ = 60′ Nov. 1912' which map is recorded in the town clerk's office in said Manchester, 110 feet, more or less; and Westerly: by land of Thomas W. Vennard 50 feet, more or less. Said premises being the major portion of lot No. 33 as shown on said map of land of James Trotter." Subsequent to the defendant's ownership, vehicles in exiting from her garage to Lilley Street were being damaged by contact with the retaining wall built by Van Dyke. As a consequence, the defendant, in 1957 and 1958, caused all but five feet of the exposed section of the retaining wall to be removed. Before doing this, she notified the plaintiff of her intention and he protested her doing it. After the wall was removed, the plaintiff requested the defendant to rebuild it, which she refused to do. The plaintiff's lot, on its northerly line, is above the grade of the sidewalk abutting his property on Lilley Street, and the plaintiff had built a wall two feet high across the front of his property next to the sidewalk and extending from

the northwest corner of his lot to a point ten feet westerly of his northeast corner. The plaintiff has used as a drive an area lying along his east boundary line, with entrance and exit being made through the ten-foot section next to his northeast corner, where no wall exists. Because of the removal of the wall by the defendant, the land west of the wall began to subside to such an extent that the plaintiff's driveway became slanted downward to the east. A vehicle left standing by the plaintiff in the driveway area slid downward toward the defendant's garage and had to be extricated; and because of this the plaintiff no longer uses this area as a driveway.

The simple issues presented in this appeal are whether the soil subsidence occurred on the plaintiff's land or solely on the disputed strip of land which the defendant claimed to own. In resolving this issue, it became necessary to determine the location of the common boundary between the plaintiff's and the defendant's adjacent parcels and, subordinately, to adjudicate title. The burden was upon the plaintiff to prove the location of the boundary line. *Simmons* v. *Addis,* 141 Conn. 738, 741. In deciding these issues in favor of the plaintiff, the court based its conclusion upon the following facts found.

The Trotter map was not offered as an exhibit but was freely used, without objection, by the witnesses and the court in connection with testimony pertaining to the location of certain existing merestones, remnants of a fence and of the Van Dyke wall, lot measurements, and boundary lines between the various lots, including those now owned by the parties. This map showed the plaintiff's east boundary to be straight for its entire length of 95.7 feet, which would include the northerly 50 feet forming the common boundary between the plaintiff's and the defendant's land. The southwest corner of the plain-

tiff's land was marked by a merestone, the existence of which was known to both parties. There was a merestone marking the southeast corner of the plaintiff's lot. There was a merestone on the plaintiff's east line, at the southwest corner of the defendant's lot, which was in place when the defendant became the owner. About 1958, after the defendant removed the retaining wall, the plaintiff had his land surveyed, and the surveyor placed a merestone to mark the northeast corner of the plaintiff's lot at its junction with Lilley Street. All three merestones are points in a straight line which delineates the plaintiff's easterly boundary and marks the common boundary of the parties' properties where they adjoin. The plaintiff's property boundary lines have remained unchanged since 1915. He has, since before 1918, exercised complete, open and exclusive possession and control over the full width of the ten-foot driveway which adjoins the defendant's property and is west of the common boundary.

After the defendant acquired her property, she had it surveyed by a qualified and licensed civil engineer and surveyor. The results of this survey appear in a plan or map introduced as defendant's exhibit No. 1. In preparing the survey and plan, the surveyor did not refer to the Trotter map for the reason that the original deed from Trotter to McCann, defendant's predecessor in title, made no reference to such map. Exhibit No. 1 shows the northeast corner of the plaintiff's property to be 6.4 feet westerly of the merestone set by the plaintiff's surveyor on Lilley Street. This would reduce the plaintiff's frontage on Lilley Street by that amount and correspondingly add a triangular strip to the defendant's property, carved out of land which since 1915 had been west of the Van Dyke wall. It is the defendant's principal claim that the common boundary line shown on exhibit No. 1 is the correct

boundary and therefore there has been no damage to the plaintiff's land because of deprivation of lateral support. Admittedly, the subsidence of the soil occurred within the triangular strip.

The defendant has moved to correct the finding by striking certain portions therefrom and by adding thereto seven additional paragraphs, all but three of which were not mentioned either in the assignment of errors or in the defendant's brief. We have examined the evidence and find no reason to correct the finding in any material respect which would be of advantage to the defendant. The further difficulty in which the defendant finds herself is that the court's finding and ultimate conclusions of fact are based on the Trotter map and the testimony pertaining thereto, and that map is not before us as an exhibit. All of the evidence having to do with the original Trotter map, which is referred to in the defendant's deed, came in without objection and was relied on by the court. Since this map is not before us for examination, we can neither correct the findings derived from the Trotter map nor disturb the court's conclusions.

In its memorandum of decision, which is a part of the record on appeal, the court indicated that if it had not found the boundary line to be where it was fixed by the description in the plaintiff's deed, the Trotter map and evidence existing on the ground, it would have been led to the conclusion that the plaintiff's possession of the strip in question was exclusive, open and visible for more than fifteen years without license or consent of the owner, and therefore the plaintiff would have acquired title by adverse possession. General Statutes § 52-575; *Loewenberg* v. *Wallace,* 151 Conn. 355, 357; *Goldman* v. *Quadrato,* 142 Conn. 398; *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 695; *Barrs* v.

*Zukowski,* 148 Conn. 158, 166. Adverse possession has not been pleaded, and we need not consider whether that issue was properly involved. Cf. Practice Book § 86; *Bixby* v. *Backues,* 346 Mo. 955, 958; 2 C.J.S., Adverse Possession, §§ 209, 213. Suffice it to say that the court's conclusion amounted to a finding that the boundary line, as established by the Trotter map and the testimony of the plaintiff, coincided with a line bounding land to which the plaintiff had claimed title and of which he had been in exclusive possession since he acquired the property in 1915, and, therefore, was reasonably and logically confirmatory of the correctness of that line as shown by documentary title.

Since the plaintiff's claim to possession was satisfactorily established, the defendant's grantor patently was not in possession at the time of the grant to the defendant, and consequently the deed to the defendant as to the disputed portion was void. General Statutes § 47-21. Adverse possession and disseisin are in a practical sense the obverse and the reverse sides of the same coin. See, for example, *Pepe* v. *Aceto,* 119 Conn. 282, 287; *Schroeder* v. *Taylor,* 104 Conn. 596, 605. " 'A mere paper chain of title does not establish ownership in one unless his possession or that of his predecessors in title is shown, though title satisfactorily established may draw with it possession in the absence of any evidence to the contrary. *Foote* v. *Brown,* 81 Conn. 218, 225 . . . .' *Mentz* v. *Greenwich,* 118 Conn. 137, 143 . . . ." *Loewenberg* v. *Wallace,* 147 Conn. 689, 694; see *Robinson* v. *Meyer,* 135 Conn. 691, 693; *Searles* v. *DeLadson,* 81 Conn. 133, 136. "The conveyance may be void as to the part comprised in this strip and valid as to the other part of the conveyance of which the grantor of the deed to the defendants had the possession at the time of the conveyance. *Goodman* v. *Newell,* 13 Conn. 74."

*Milardo* v. *Branciforte,* 109 Conn. 693, 699. Ouster or disseisin need not be specially pleaded. Proof of possession by the defendant would be necessary even if the plaintiff had not pleaded adverse possession. *Stevens* v. *Smoker,* 84 Conn. 569, 573. But since that question of ouster or disseisin was not raised in the trial court we need not consider it specifically on the appeal. We merely point out its relevance to the finding of the court in deciding that the boundary line claimed by the plaintiff was supported by better and weightier evidence than the boundary line claimed by the defendant, as shown on exhibit No. 1.

The principal attack of the defendant on the judgment and the coercive relief granted may be summarized as follows: (1) The plaintiff's right to lateral support did not include furnishing support to his vehicle either at the time of the original subsidence of the soil or at any time thereafter; (2) the subordinate facts do not sustain the injunction because they fail to show any intention on the part of the defendant for further excavation, and there is absent the likelihood that further subsidence will occur or that the plaintiff will be irreparably injured; and (3) the mandatory relief granted, requiring the defendant to rebuild the wall removed by her, was unreasonably drastic in that the most that the plaintiff would be entitled to would be an order to supply lateral support and not to build or restore a wall.

With respect to the first claim, the court found specifically that because of the removal of the wall by the defendant the land west of the wall began to subside to such an extent that the plaintiff's driveway became slanted downward to the east. There is no finding that the subsidence of the soil was caused by the additional weight of the truck and

that the plaintiff's adjoining land would not have fallen or crumbled because of its own weight. The right of coterminous owners to lateral support is, of course, limited to support of the soil in its natural state by the adjacent soil in its natural state. *Carrig* v. *Andrews*, 127 Conn. 403, 408; *Ceffarelli* v. *Landino*, 82 Conn. 126, 129; 1 Am. Jur. 2d 720, Adjoining Landowners, § 43; 5 Powell, Real Property § 699; 3 Tiffany, Real Property § 752; 4 Restatement, Torts § 817 (1). This right, however, is not so limited as to deprive an adjoining proprietor from using his land for fear of falling into an excavation made by his neighbor. We have found only one case in which the rule urged by the defendant has been strictly applied. In that case, the plaintiff sought recovery for injuries received as a result of a fall, because of subsiding soil, into an excavation made by a neighbor along the common boundary line. The court there held that the right of lateral support was limited to the land in its natural condition and did not extend to bearing the weight of what might be placed upon the land. *Pullan* v. *Stallman,* 70 N.J.L. 10. On the other hand, it has been held, by equally eminent authority, that where an adjoining proprietor excavates land on his own property and replaces it with a stone wall in order to furnish support to the contiguous land, which support had been removed by the soil excavation, the obligation to maintain the wall passes with the land and is enforceable against the successors in title during their tenure. *Gorton* v. *Schofield,* 311 Mass. 352; note, 139 A.L.R. 1267. And in the case of *Lyons* v. *Walsh,* 92 Conn. 18, the court, in a dictum referred to in the Massachusetts case, expressed the same view but denied injunctive relief for the reason that the retaining wall had been constructed by a predecessor in title of the defendant so as to lie wholly within the plaintiff's boundary line, and, therefore,

the obligation of maintenance was not a charge on the defendant's land.

It may also be noticed that even where land is burdened by buildings and structures for which an adjoining proprietor is not required by law to furnish support, this circumstance does not permit a negligent removal of such support for the adjacent soil. Although an adjoining owner may remove soil from his land provided the removal does not cause adjacent soil to settle of its own weight, he may not do so without using care to avoid inflicting unnecessary harm. "The maxim *sic utere tuo ut alienum non laedas* expresses the common duty of taking care in the exercise of one's property rights." *Canfield Rubber Co.* v. *Leary,* 99 Conn. 40, 47; see *Huber* v. *H. R. Douglas, Inc.,* 94 Conn. 167, 186; *Wharam* v. *Investment Underwriters, Inc.,* 58 Cal. App. 2d 346; *Lugin* v. *Dobson,* 376 Pa. 620; *Kosco* v. *Hachmeister, Inc.,* 396 Pa. 288; notes, 129 A.L.R. 623, 632, 59 A.L.R. 1252.

In the present case, it is undisputed that the removal of the stone wall exposed a vertical cut. Defendant's exhibit 1 and the testimony of the civil engineer, who also is a qualified soil expert, indicate that to provide lateral support for the plaintiff's soil in its natural state there would need to be an angle of repose of 35 to 42 degrees created by the slope of the soil left in the excavation in order to prevent subsidence of the adjoining land. Such was in effect the order granted by the trial court and approved by our Supreme Court of Errors in *Trowbridge* v. *True,* 52 Conn. 190, 192, 200.

As to the defendant's second principal claim, that the facts did not warrant issuance of an injunction, it does not appear that the defendant in the trial of the case below made any claim that the allegations in the complaint did not warrant the relief

asked for. The pleadings put in issue not only the right of undisturbed possession but the question of title. *Barrs* v. *Zukowski,* 148 Conn. 158, 164. The court disposed of the case, as the parties had tried it, by fixing the boundary line between the plaintiff's and the defendant's land. Under these circumstances, it is enough to say that so far as the relief asked for was concerned, the pleadings gave the court the right to pass upon it. Furthermore, there was sufficient evidence on the basis of which the court could find not only the likelihood of a continuing nuisance caused by subsiding soil but also a deprivation of the plaintiff's right to the use and enjoyment of his property to his boundary on the east, making necessary the coercive order compelling restoration of lateral support. See *Barca* v. *Mongillo,* 133 Conn. 374, 376.

Although we are of the opinion that the trial court was warranted in granting injunctive relief, we believe that the order now before us is too drastic and severe for serving the equitable ends inherent in this case, on the facts as they appear. The plaintiff was not entitled to the continuation or the rebuilding of a wall in order to obtain the lateral support for his land to which he was entitled. See, e.g., *Carrig* v. *Andrews,* 127 Conn. 403, 405. The difference in elevation between the adjoining land of the parties at the boundary line was not more than four feet. While there is no finding as to the width of the wall formerly existing, the court did find that, because of its presence, vehicles emerging from the garage found it difficult to avoid contact with the wall. It is reasonable to suppose that adequate support of some kind could be furnished which would meet the exigencies of the situation. There was apparently no hearing on the kind of support that would be adequate, and the assumption appears to have been that the defendant was required to replace

the same instrumentality of lateral support that she had taken away.

"As the case was fully tried on its merits in the court below, and the erroneous part of the judgment can be separated with precision from the rest, it seems that it will be for the best interests of all parties that the judgment should be modified rather than be reversed." *Rutkoski* v. *Zalaski*, 90 Conn. 108, 115.

There is error in part and the case is remanded with direction to modify the judgment, insofar as it gives equitable relief, so that the defendant be prohibited from maintaining an excavation upon her land in such way as to cause the plaintiff's soil to crumble or fall away under its own weight upon the land of the defendant.

In this opinion PRUYN and JACOBS, Js., concurred.