## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Howard T. Urbach et al.

v.

E. E. Phillips, Sr., et al.

July 11, 1967

Case No. B-8423

By JUDGE A. CHRISTIAN COMPTON

A decree will be entered in favor of the plaintiffs in this cause: (1) requiring the defendants to restore adequate lateral support of the plaintiffs' land; (2) requiring the defendants to cause to be replaced to the level of the plaintiffs' land in its natural state the soil and dirt which has subsided and eroded since the removal of the wall in question, such soil to be replaced, of course, on the west side of the eastern line of the plaintiffs' property; and, (3) awarding damages to the plaintiffs in the amount of $625.00. The decree will also enter judgment in favor of the plaintiffs upon the cross-bill.

The plaintiffs, owners of the property known as 608 East Main Street in this city, allege that the defendants, who own the property at 610-612 East Main Street which adjoins theirs to the east thereof, removed a wall located on the western line of the defendants' property and that, as a result, the plaintiffs have lost the lateral support of their land to which they are entitled. They claim that their land has been caused to crumble and fall away creating a dangerous condition and restricting the plaintiffs' use of their property. They seek an injunction requiring the defendants to restore the wall and ask for

compensation in damages for loss of use of their land or, in the alternative, ask that the defendants pay as damages an amount sufficient to enable the plaintiffs to reconstruct the wall on the plaintiffs' land and they ask to use so much of the defendant's property as may be needed during such reconstruction.

The defendants deny that there is any duty of lateral support owed to the plaintiffs under the circumstances of this case and assert that even if any such legal duty is imposed upon them, that the plaintiffs created a condition which caused the removal of the wall in question by their actions upon 608 E. Main Street. The cross-bill seeking an award of damages against the plaintiffs arising out of the alleged encroachment by the plaintiffs upon the property of the defendants was abandoned during closing argument.

From the evidence, a great deal of it being conflicting, the Court finds the facts of this cause to be that in 1945 the defendants acquired 610-612 East Main Street, a lot 30.5 feet wide, having two buildings thereon, one building fronting on the north side of Main Street and another brick building on the rear of the lot which had been used for car storage. After continuing this use of the building in the rear for five or six years, it was torn down with the west wall of the building left standing on the defendants' west property line to the rear of their lot. This is the wall in question which was removed for a length of approximately 55 feet in the early part of 1964, such wall having furnished lateral support to that portion of the plaintiffs' land located to the rear of their premises at 608 E. Main Street. This wall was about six feet in height at its south end and about eight feet high at its north end when measured from the plaintiffs' land.

The plaintiffs' property was 18.15 feet wide at the front and had been in the Urbach family for at least fifty years. It was higher in elevation than the defendants', the land sloping down to the East. It, too, had a building to the rear, which "straddled" the property line of 606 E. Main Street, the property adjoining the plaintiffs' to the West which was owned by the witness Bailey. The east wall of this building was about three feet west of the wall in question. During the "latter

part" of 1963, Bailey and the plaintiffs agreed to tear down the old building straddling their property line in order to clear the rear of their lots for parking. This old building had a basement and the debris was allowed to fall into the basement when the building was torn down in December of 1963. Thereafter, some grading took place of the area in the rear of the plaintiffs' lot and bank gravel was spread on Bailey's lot, but no dirt or gravel was piled against the wall in question. There was no change made in the level of the plaintiffs' property nor was any dirt removed from the west side of the wall in question. A tree root had grown through the top of the wall and when this was pulled out three top layers of brick were knocked off but this minor damage was immediately replaced.

During the process of the work on 606-608 E. Main Street, an iron plate described as a "dead man" was purchased to reinforce the wall in question, however, it was not used because the wall did not need strengthening.

After several attempts had been made in 1961 and 1962 by the defendant E. E. Phillips to acquire the use of the rear of the plaintiffs' lot for parking purposes and after an exchange of correspondence (P-18, 19, 20) wherein that defendant stated that "we want the fifteen inch space that the wall takes up for our use" and pointing out that "we have been maintaining and keeping my own wall up, holding their soil in, at considerable expense to me . . . for twenty years," the wall in question was removed by the defendants during March of 1964. The defendants maintained that the wall was caused to lean to the east from four to twelve inches as a result of the activities which had taken place on the Bailey-Urbach property including the destruction of a pilaster located at point C on defendants' Exhibit 1, and that since vehicles parked on the Phillips' lot were in danger of being damaged if the wall fell, it was removed. The defendants urged that the wall "was a sorry wall" being constructed with a poor grade mortar and that it "wouldn't stand the work they (Bailey and Urbach) were doing."

Thereafter, the plaintiffs' land on their east property line adjoining and along the former location of the wall started to crumble, give way and erode. The area available to the plaintiffs for parking on their lot was

reduced and it has been necessary to call a wrecker several times to pull vehicles from the eroded area.

The plaintiff's claim that they could have derived rental income of $2,700.00 for parking and that the plaintiff Howard Urbach has been forced to park his car elsewhere at a cost of $625.00 because he has to use his car several times a day and he needed ready access to it. Had their land not fallen away, space would be available for the parking of five cars but only three or four cars may be parked in the area under the present conditions. In 1964, the Plaintiffs received a contractor's estimate for the erection of a "masonry block wall" on their property *(P-2)* at a cost exceeding $1,000.00.

### Duty of Lateral Support

Virginia follows the general rule in this country which is well stated in Restatement, Torts, Section 817(1) as follows: "a person who withdraws the naturally necessary lateral support of land in another's possession, *or support which has been substituted for the naturally necessary support*, is liable for a subsidence of such land of the other as was naturally dependent upon the support withdrawn, in the absence of a superseding cause or other reason for relieving him." (Italics added.) See 1 M.J., *Adjoining Landowners*, Section 5; 1 Am. Jur. 2d, *Adjoining Landowners*, Section 37; 2 C.J.S., *Adjoining Landowners*, Section 5.

This rule of absolute liability for the withdrawal of lateral support of the dominant estate in its natural condition is to be compared with the rule of liability for the negligent withdrawal of lateral support of land which has been burdened by buildings or structures of any kind. "In other words, an excavation made by an adjacent owner, so as to take away the lateral support of his neighbor's ground, and cause it, unburdened by buildings or structures of any kind, to fall, slide, or break away, subjects the former to liability for the injury done, no matter how carefully he may have made the excavation. But, if his excavation is so made that the adjacent land would not have fallen, slid, or spread by its own weight, yet, weakened by the excavation, did so by reason of the weight of buildings or structures thereon, he is not liable, provided he exercised prudence, care and caution in effect-

ing the excavation." *Walker v. Strosnider*, 67 S.E. 1087, 1090 (W. Va. 1910). See also *Tunstall v. Christian*, 80 Va. 1, 3 (1885); *Stevenson v. Wallace*, 68 Va. (27 Gratt.) 77, 87 (1876). This prevailing rule is recognized in Section 175(b) of the Building Code of the City of Richmond which provides that "any person making or causing an excavation to be made shall be responsible for maintaining the soil of the adjoining property so that it will not cave in or settle, but he shall not be responsible for protecting against horizontal forces set up in the soil of the adjoining property which are caused by any buildings or structures thereon."

While the defendants do not seem to seriously disagree with the general rule, they say that it does not apply here because the plaintiffs have increased the horizontal pressure on the earth by their activities on their land; that by piling earth against the wall and destroying the pilaster the plaintiffs impaired the soundness of the wall; and that the duty of lateral support was not owed by them to the plaintiffs because they have made no "excavation" and the wall was not a retaining wall but merely a wall of an old building.

As stated *supra*, the Court feels that the evidence does not show that any amount of soil was piled against the wall by the plaintiffs such as to cause it to bulge nor does the evidence show that the work upon the pilaster caused it to bulge. Furthermore, there is no substantial evidence to show any increase in the horizontal pressure or the amount thereof.

Whether it be called an "excavation" or not and whether the wall be called "a retaining wall" or not, the fact remains that the defendants by their act have removed, in the words of the Restatement, "support which has been substituted for the naturally necessary support" of the plaintiffs' land. The evidence clearly shows the slope of the land down from west to east. It clearly shows that the wall in question, in the defendants' own words, had been "maintaining" and "holding (the plaintiffs') soil in . . . for twenty years." It also shows that the land subsided upon removal of the wall. Under the rules stated this imposes absolute liability upon the defendants.

But the defendants say that the wall would have fallen anyway. They exhibited samples of the mortar taken

from the wall to demonstrate how easily it would crumble. As demonstrated in the correspondence referred to above, the defendants claim that no duty is owed to maintain the wall in a condition to furnish adequate lateral support since it is wholly on their property and since it belongs to them.

This position disregards the nature of the right to lateral support which is fully discussed as it bears on this case in comments a, b, i, j and k of the Restatement, Torts, Section 817(1). The right as related to support of soil in its natural state (and the land of the plaintiffs is in its natural state having no structures upon the area in question) is a property right which naturally attaches to and passes with the soil without any specific grant thereof. The servient owner is bound to maintain the wall, which has been substituted for the natural lateral support, in such condition as to prevent damage to the adjacent land of the dominant estate. It is a charge upon the land of the defendants. The duty applies even though the defendants are transferees or successors in title to the owner who originally substituted the artificial support for the natural support. See illustration 10 under Section 817 of the Restatement of Torts which sets out facts almost identical to this case.

The cases of *Gorton* v. *Schofield*, 41 N.E.2d 12, 139 A.L.R. 1262 (Mass. 1942), and *Vennard* v. *Morrison*, 209 A.2d 202 (Conn. 1964), also present facts very similar to this case. In the *Gorton* case the owner of the servient estate was held liable to his neighbor for the damage caused by allowing a retaining wall on the defendant's property to become out of repair when an excavation had been made by the defendant's predecessor in title and the retaining wall had been erected by such predecessor. In the *Vennard* case, the defendant servient owner removed a wall adjacent to the plaintiff's driveway causing the soil to subside and the driveway to slant down to the defendant's land to such a degree that on one occasion a vehicle left standing by the plaintiff in his driveway slid downward toward the defendant's land and had to be extricated. The court there prohibited "the defendant from maintaining an excavation upon her land in such a way as to cause plaintiff's soil to crumble or fall away" citing the rules heretofore discussed.

In summary, the plaintiffs have a right to lateral support of their land in its natural state and there is absolute liability upon the defendants for the withdrawal of such support.

### The Relief Afforded

The plaintiffs are entitled to have the defendants provide adequate lateral support to their land at the side thereof. This may be done by rebuilding the wall upon the property of the defendants or by any other effective means which will provide adequate lateral support to the plaintiffs' land in its natural condition. Since the duty of lateral support is a property right of the plaintiffs and since it is a charge upon the land of the defendants, the Court feels that the nature of the relief should be as aforesaid rather than to award to the plaintiffs a sum as damages to cover the cost for providing their own lateral support. Furthermore, the decree will require the defendants to cause to be replaced to the level of the plaintiffs' land in its natural state the earth which has subsided and eroded since the removal of the wall.

Recovery of damages may be had for the wrongful withdrawal of lateral support in such an amount as the plaintiff can show to have been a necessary consequence of the defendants' act. 1 M.J., *Adjoining Landowners*, Section 9; 36 A.L.R.2d 1253. The Court feels that the evidence is not sufficient to support the claimed loss of anticipated parking revenue. No tenants had been obtained and no leases signed. The use of the land for paid parking was in the planning stage. Furthermore, use was being made of the area in its damaged state because the plaintiff Howard Urbach states that three or four vehicles park there daily.

The item of cost of $625.00 to cover the amount expended by one of the plaintiffs to park elsewhere will be allowed as damages. But for the act of the defendants in reducing the plaintiffs' parking area thereby restricting the number of vehicles using the property, this expenditure would not have been necessary and this loss it therefore a necessary consequence of the defendants' act.