MYERS, P.J.,
for the Court:
¶ 1. A final judgment was entered by the Warren County Chancery Court which held the defendant, VFW Post 1034, Inc. (VFW) liable for damages as a result of withdrawing the lateral support from the property of the plaintiff, Jane Pecanty (Pecanty).[1] Prior to that judgment being entered, the chancery court granted summary judgment for the defendants-appel-lees, Mississippi Southern Bank, as merged with State Bank and Trust Company of Cleveland, Mississippi (the “Banks”), and Jimmy and Sheila Tarver (the “Tarvers”). Pecanty appeals, averring that the chancery court erred in granting summary judgment to the Banks and the Tarvers. Finding no reversible error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 1985, Pecanty and her husband, Mitch Pecanty, purchased a home in Vicksburg, Mississippi. In 2000, VFW purchased an adjacent piece of property located behind and downhill from the Pecantys’ property. Shortly thereafter, VFW began a landscaping project which included heavy excavation to the hillside abutting VFW’s and the Pecantys’ respective properties. As a result of the excavation, the Pecantys began experiencing significant erosion in the rear of their property.
¶ 3. On April 30, 2001, the Pecantys entered into a written agreement with VFW, in which VFW agreed to restore the Pecantys’ property to its original state; and to ensure that no further erosion of land would occur, VFW promised to erect a retaining wall by July 1, 2001. According to the agreement, VFW admitted that the “cut made to the hill” caused erosion of the dirt to the extent that the property owned by the Pecantys “was eroding away and being lost.” VFW promised that in the event that the restoration did not continue to maintain the Pecantys’ property “in its original state so as to prevent any further sloughing or loss of land or damages[,]” VFW would “promptly cause said property to be repaired and maintained. ...” The agreement added, “in the event of [VFW’s] failure to do so, VFW shall be responsible ... for all damages sustained, together with reasonable attorney’s fees and costs.... ”
¶ 4. As promised, VFW erected a retaining wall; however, the Pecantys still continued to experience significant erosion on their property. VFW undertook no further efforts to remedy the damage to the Pecantys’ property or make any modifications to the retaining wall.
¶ 5. In 2001, Pecanty’s husband became seriously ill, and Pecanty began focusing all of her attention on her husband’s convalescence. Meanwhile, the Banks acquired VFW’s property in September 2001. The Banks thereafter conveyed the property to the Tarvers in February 2005. *116 Following her husband’s death in 2006, Pecanty refocused her attention on the continuing damage to her property. According to Pecanty, damage was occurring “with every rainfall.”
¶ 6. On October 30, 2006, Pecanty filed a complaint in chancery court seeking an injunction and damages against both VFW and the Banks. Pecanty alleged that VFW, after having purchased the property adjacent to hers in 2000, “undertook to make improvements on its property which included altering the landscape by dirt work and grading a hillside to such an extent and degree so as to alter the natural flow of run-off water between the two properties.” Pecanty further alleged that the alteration of the natural flow of water has caused and continues to cause serious erosion and sloughing of her property. She requested the chancery court to compel VFW and the Banks, jointly and severally, to erect such permanent retaining walls, barriers, or other structures necessary to prevent any further washing and/or erosion to her property. She further requested that she be awarded monetary damages entitled for the restoration and reclamation of her real property.
¶ 7. In July 2007, the Banks filed a motion for summary judgment, arguing that Pecanty’s cause of action against them was barred by the three-year statute of limitations set forth in Mississippi Code Annotated section 15-1-49 (Rev.2003). The chancery court found that the limitations period prescribed by section 15-1-49 began running on July 1, 2001, when VFW failed to perform its contract. Accordingly, the Banks were granted a judgment as a matter of law and were dismissed, with prejudice, as defendants in the case.
¶ 8. On December 21, 2007, by order of the chancery court, the Tarvers, the then title owners of the property previously owned by VFW, were joined as defendants in Pecanty’s suit against VFW. Subsequently, the chancery court granted the Tarvers’ ore tenus motion for summary judgment, finding that Pecanty’s cause of action against them was also barred under the three-year statute of limitations set forth in section 15-1-49.
¶9. In October 2008, Pecanty’s case against VFW was heard on the merits in the chancery court. At the hearing, Pe-canty testified that after VFW erected the retaining wall, her property “kept washing.” She said that from that point forward neither VFW nor the subsequent owners ever made any effort to try and eliminate the damage that was occurring on her property.
¶ 10. Geotechnical expert, Dr. George Hammitt, testified on behalf of Pecanty. Dr. Hammitt explained that Pecanty’s property is comprised of loess soil, a highly-erodible type of soil prevalent throughout Warren County, Mississippi. According to Dr. Hammitt, before VFW cut into the hillside, a natural-lateral support existed on the hill abutting the two properties wherein the loess soil had obtained “a point of equilibrium.” By cutting into the hill, VFW both altered the stability of the natural support and affected the surface and subsurface laminar flow of water on Pecanty’s property. Dr. Hammitt said that the retaining wall built by VFW was improperly designed and negligently constructed. He described the wall as consisting of old railroad cross-ties stacked and held together by steel-vertical posts. In Dr. Hammitt’s opinion, no engineering went into the constructing of the wall. He said that because no arrangements were made for drainage behind the wall, the loess soil is now “being transported by water in, under, through, and around the wall.”
¶ 11. The chancery court found that VFW executed an agreement with Pecanty *117 to restore her property for the damage it had caused with its excavation, but it did “nothing to rectify” the damages incurred therefrom. Accordingly, the chancery court entered a judgment in favor of Pe-canty and awarded her monetary damages.
¶ 12. Feeling aggrieved by the chancery court’s grant of summary judgment to the Banks and the Tarvers, Pecanty appeals, raising one issue: “Whether damages to an adjoining landowner by the previous owner and subsequent purchaser constitutes a continuing tort which would toll the statute of limitations.”
STANDARD OF REVIEW
¶ 13. Summary judgments are reviewed de novo. Hurdle v. Holloway, 848 So.2d 183, 185 (¶ 4) (Miss.2003). “A summary judgment motion is properly granted when no genuine issue of material fact exists.” Jackson v. Carter, 23 So.3d 502, 504 (¶ 5) (Miss.Ct.App.2009). “The moving party has the burden of demonstrating that no genuine issue of material fact exists within the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and that he is entitled to judgment as a matter of law.” Id.
DISCUSSION
¶ 14. As previously mentioned, VFW did not file an appeal in this matter, and Pecanty did not assign any point of error to the chancery court’s final judgment with respect to VFW. The issue we have before us pertains solely to the chancery court’s decision to grant summary judgment in favor of the Banks and the Tarvers. Thus, the following discussion is limited to that decision.
¶ 15. Pecanty contends that while VFW was the party responsible for the excavation that caused the removal of her property’s lateral support and failed to perform its contract, the Banks and the Tarvers, as subsequent title holders, neglected their respective duties to maintain their property. Pecanty contends that the damages to her property are the result of separate acts which constitute a continuing tort, and the subsequent purchasers of the property previously owned by VFW have a duty to eliminate the continuous torts committed against her property. Accordingly, Pecanty avers that because the statute of limitation begins anew with each subsequent injury, the chancery court erred in granting summary judgment in favor of the Banks and the Tarvers.
¶ 16. As Pecanty points out, there is very little Mississippi case law dealing with lateral-support claims. The only case we could find that substantively addressed this type of grievance is Lerner Jewelers, Inc., v. L.L. Glascock, Inc., 199 So.2d 66 (Miss.1967). In Lemer, a jury found that a construction company was not negligent for its failure to prevent “foundation and soil movement” on an adjacent landowner’s property, the movement of which caused damage to the adjacent landowner’s building. Id. at 67. On appeal, the supreme court passed on the issue of whether a contractor could be held strictly liable for damages based on the loss of lateral support to an adjoining landowner’s building as a result of excavation work performed by the contractor. Id. at 67-69. Pursuant to a city building code that governed in the case, the owner of the property who hired the contractor was required to take certain measures in order to safeguard the adjoining owner’s property. Id. at 68-69. In affirming the jury’s verdict, the Lemer court stated that “generally ... where a statute or building code places liability on the owner, the contractor is not liable in the absence of negligence.” Id. at 69. Lemer noted that the liability of the contractor was governed by the common law, *118 and, generally, under common law, “the right to lateral support applies to land in its natural state and not to the additional weight of buildings or other structures placed on the land.” Id. Accordingly, Lerner held that the lower court did not err in granting jury instructions relative to negligence. Id.
¶ 17. Here, distinguishable from Lerner, we have at issue the undisputable loss of lateral support to land in its natural state, with no statute or building code that controls. Under common law traditions, “adjoining [land]owners have a natural right to the lateral support of each other’s ground[;][t]his principle ... applies only to land in its natural state[;][t]he duty to provide lateral support is ongoing, and one of continued support running against the servient land.” 1 Am.Jur.2d Adjoining Landowners § 44 (2005). The duty is absolute and is not predicated on negligence. 2 C.J.S. Adjoining Landoumers § 8 (2003).
¶ 18. The duty, however, does not preclude a landowner from excavating upon his or her land; but:
... landowners who excavate their land must do so in a manner that protects adjoining property in its natural state from collapsing or eroding away. Consequently, the excavating landowner must excavate in such manner that his or her neighbor’s land will not, by its own weight or through the action of the elements, fall into the excavation, and may be required to replace by artificial means the natural support removed by excavation.
1 Am.Jur.2d Adjoining Landowners § 52. The Restatement (Second) of Torts section 817 (1979) provides, in part, the following:
(1) One who withdraws the naturally necessary lateral support of land in another’s possession or support that has been substituted for the naturally necessary support, is subject to liability for a subsidence of the land of the other that was naturally dependant upon the support withdrawn.
[[Image here]]
h. What is subsidence. A subsidence is any movement of the soil from its natural position. This movement may be in any direction. It may be of surface or subsurface soil. A shifting, falling, slipping, seeping or oozing of the soil is a subsidence....
i. Liability is for subsidence. The withdrawal of the naturally necessary lateral support ... subjects the actor to liability ... but does not make him liable in an action for damages unless, and until, a subsidence occurs.... The actor may provide artificial support to replace natural lateral support, and if he does so and it prevents subsidence no action lies against him. The statute of limitations does not begin to run until a subsidence occurs and it runs then only for that subsidence. The actor continues subject to liability for a further distinct subsidence although it flows from the same act.
To make the actor liable, the subsidence must be substantial. The rule that the law will not concern itself with trifles is applicable. Thus the fall of a few grains of sand is not actionable.
(Emphasis added). But see Easter v. Dundalk Holding Co., 199 Md. 324, 86 A.2d 477 (1952). There, the Court of Appeals of Maryland acknowledged that "with regard to lateral-support claims the prevailing view is that a cause of action arises, not from the moment a lawful excavation is made, but from the time when some damage occurs therefrom. Id. at 479 (citation omitted). The Easter court suggested, however, that there may be “a possible distinction between the latent danger of subsidence through the removal of subja- *119 cent support and the patent loss of lateral support through erosion.” Id.
¶ 19. Limitations theory aside, what is clear is that the great weight of authority holds where a landowner has withdrawn lateral support from adjacent property, he or she remains liable notwithstanding the subsequent transfer of his or her land to a third person. A purchaser of land “is not liable for a condition or consequence resulting from a former owner’s excavation leaving the adjoining land without lateral support, in the absence of negligence on his or her part, and has no duty to restore such support.” 2 C.J.S. Adjoining Landowners § 27; see also Keck v. Longoria, 28 Ark. App. 277, 771 S.W.2d 808, 811 (1989) (“we think it is clear that the general rule does not hold the owner or possessor of property liable for the withdrawal of lateral support unless he is the one who withdraws the support”); First Nat’l Bank and Trust Co. v. Universal Mortgage & Realty Trust, 38 Ill.App.3d 345, 347 N.E.2d 198, 200 (1976) (a defendant, whose predecessor in title caused the removal of adjacent landowner’s lateral support, had no duty to restore such support); Paul v. Bailey, 109 Ga.App. 712, 137 S.E.2d 337, 340 (1964) (the person who makes the excavation which causes injury to the adjoining property is the one who is liable for damages, not the person in possession at the time of the injury); Spoo v. Garvin, 236 Ky. 113, 32 S.W.2d 715, 716 (1930) (subsequent purchaser not liable for condition or consequences resulting from act of former owner which altered natural support to adjacent property).
¶ 20. On the other hand, there is authority that a current landowner may be held liable to an adjoining landowner for damage caused by an excavation made by a predecessor in title, “where the predecessor in title took appropriate steps to preserve the lateral support by building a retaining wall which the current owner allowed to fall into disrepair.” 1 Am. Jur.2d Adjoining Landowners § 56. The case of Gorton v. Schofield, 311 Mass. 352, 41 N.E.2d 12, 13 (1942), cited by Pecanty, illustrates this principle sounding in equity. In Gorton, the Supreme Judicial Court of Massachusetts upheld a decree from a bill in equity which ordered the defendant to provide adequate support to the plaintiffs land by strengthening an existing retaining wall on the defendant’s land. Id. at 15-16. The excavation was made, and the wall was built on the defendant’s land by a predecessor in title sometime between 1848 and 1876 to provide lateral support for the plaintiffs property. Id. at 14. The plaintiffs land began subsiding soon after the defendant demolished a stable located on his land in 1937; the stable had abutted the retaining wall for years and furnished it with additional support. Id. at 13. In affirming the decree, the Gorton court reasoned as follows:
[Wjhere a land-owner had made an excavation in his land, and thereby removed the lateral support to which his neighbor is entitled, but had built a solid retaining wall to prevent subsidence, which, during his ownership, prevented it, and had then sold his land to another and that other to others, and, owing to a subsequent owner — it might well be fifty years after — permitting the retaining wall to decay and no longer to answer the purpose for which it was constructed, with the result that his neighbor’s land has subsided, he would be liable to answer in damages for the injury, and the man whose failure to keep up the retaining wall was the effective cause of the injury would go scot free, and that too where the subsidence would not have occurred if the retaining wall had been kept in repair.
Id. at 15 (citation and internal quotations omitted).
*120 ¶ 21. We agree with the appellees, Gorton is distinguishable from the instant case before us. Here, we do not have at issue a properly-constructed retaining wall that was allowed to fall into disrepair; rather, we have a wall that was not constructed or designed properly and has failed to function since its completion. Restatement (Second) of Torts § 817 provides the following:
k. Substituted or remote support. The actor may avoid liability by furnishing artificial support, such as a retaining wall, sufficient to replace the natural support withdrawn. The later withdrawal of the artificial support subjects the person who withdraws it to ... liability. ... Even if the artificial support is not withdrawn, the actor remains liable if it proves inadequate and subsidence occurs that would not have occurred if the natural support had not been withdrawn. This is true regardless of the care exercised in providing the artificial support.
¶ 22. Applying these principles to the instant case, we think it is abundantly clear that VFW was the sole party at fault. Neither the Banks nor the Tar-vers were responsible for removing the lateral support from Pecanty’s land, nor were they responsible for constructing the retaining wall which — as Pecanty, herself, admitted — has, at all times, failed to fulfill its purpose.
¶ 23. Nonetheless, citing to Long v. Magnolia Hotel Co., 227 Miss. 625, 86 So.2d 493, 496 (1956), Pecanty contends that separate and apart from VFW’s actions and omissions, a genuine issue of material fact exists as to whether either of the subsequent landowners was negligent in failing to maintain them property in a responsible manner, so as to alleviate the persisting damage that continues to occur on her property. Pecanty submits that the “erosion, washing, sloughing, and cowing” of her property, which “is not a sudden event,” is a dangerous condition and constitutes a continuing tort, thereby tolling the statute of limitations.
¶ 24. We do not find Long analogous. In Long, the roof of the plaintiffs restaurant was damaged by overhanging bricks; the bricks fell from the Hotel Vicksburg while a contractor, who had been hired by the hotel, was performing repairs following a tornado. Id. at 494-95. The supreme court said the “landowner who, himself or by others under his direction or permission, negligently or unskillfully performs an act on his premises” could be held liable for damages to the restaurant’s roof. Id. at 496. (citation omitted). The supreme court held that the hotel company and the contractor owed a duty to the plaintiff to exercise reasonable care to avoid injury to her property when they undertook to remove the overhanging bricks, and the fact that her building had already been damaged by the tornado did not affect their liability for additional damage caused by their negligence. Id. The court opined as follows:
[I]t was necessary that prompt action be taken to eliminate the danger that existed as a result of the unsafe condition of the outer wall of the hotel building. But the fact that the dangerous condition had been created as a result of a tornado, and that quick action was required to eliminate the danger, did not relieve the hotel company and its contractor from the duty to exercise due care not to injury unnecessarily the appellant’s property.

Id.

¶ 25. Unlike in Long, our defendants, as mentioned, had no involvement with the removal of Pecanty’s lateral support or in the construction of the retaining wall. Further, other than the accumulation of *121 mud on the servient property’s driveway as a result of the slow but sure secretion of loess soil through the wall, there is no affirmative indication that either subsequent landowner had any reason to suspect — prior to Pecanty’s complaint in chancery court — that a problem existed with Pecanty’s property, much less a dangerous condition. Despite its defective utility, the retaining wall, according to the evidence, for all intents and purposes is a sturdy structure. Dr. Hammitt even testified that if he were to restore Pecanty’s property, he would leave the retaining wall standing and would place a mesh fabric on the face of it; in his opinion, this would allow the water to drain through while preventing the soil from coursing through along with the water.
¶ 26. The rule in Long, which Pecanty proposes should apply here, is in accordance with Restatement (Second) of Torts section 366, which states, “[o]ne who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition.... ” As the appellees point out, an argument advocating the application of section 366 in a lateral-support claim was rejected by the Court of Appeals of California in Lee v. Takao Building Development Co., 175 Cal.App.3d 565, 220 Cal.Rptr. 782 (Cal.Ct.App.1985). In Lee, the defendant was granted summary judgment on a complaint alleging that he negligently failed to repair the portion of a demolished building that had provided lateral support for the plaintiffs’ property. Id. at 567-68, 220 Cal.Rptr. 782. Relying on section 366, the plaintiffs argued on appeal that the defendant’s failure to take steps to repair the dangerous condition caused by the removal of the lateral support was, in itself, an act of negligence. Id. at 568, 220 Cal.Rptr. 782. The Lee court disagreed. Lee found that the principles espoused in section 366 were not controlling on the issue of “whether a subsequent owner is liable for the loss of an adjoining owner’s lateral support when the loss was caused by the acts of a previous owner.” Id. Lee opined as follows:
The parties cite no California case deciding the issue of whether a subsequent purchaser of land is liable for the removal of lateral support caused by the previous owner, and we find no California case so deciding. The court in Sager v. O’Connell [,] ... 67 Cal.App.2d 27, 153 P.2d 569 [ (Cal.1944) ], in determining the liability for the decay of a bulkhead erected to provide lateral support, stated that to recover a judgment against an owner it is essential to show that he or she is guilty of some act of negligence in connection with the lateral support of the adjoining property. Other jurisdictions are in accord in finding liability only where the party has acted to remove the support. The court in Fir. Nat. Bank & Trust Co., ... 38 Ill.App.3d 345, 347 N.E.2d [at 200,] citing Restatement of Torts section 817, subdivision j, and 2 Corpus Juris Secundum, Adjoining Landowners, section 25, held that an owner of real estate is not liable to an adjoining owner for loss of lateral support where alteration of the natural condition was made by a predecessor in title. (Accord McKamy v. Bonanza Sirloin Pit, Inc., ... 195 Neb. 325, 237 N.W.2d 865 [ (Neb.1976) ]; [Paul ], ... 109 Ga.App. 712, 137 S.E.2d 337). The result should be no different where it has been alleged that the loss of support was caused by the removal of an artificial structure.
Id. at 569, 220 Cal.Rptr. 782.
¶ 27. In the case before us, the legal cause of harm to Pecanty was the removal of lateral support to her property. Nei *122 ther the Banks nor the Tarvers removed the lateral support, nor did they cause the same to be removed. A dysfunctional retaining wall was built in 2001, which neither the Banks nor the Tarvers constructed or caused to be constructed. Since no action on either of their parts was the legal cause of the harm caused to Pecanty’s property, neither can be held strictly liable. Nor are the Banks and the Tarvers liable for any negligent-failure to act. While the weight of authority suggests that they may have owed a reasonable duty to maintain a properly-built retaining wall, we find no persuasive authority which instructs that they bore the additional burden of putting right what was VFW’s wrong solely on the basis that they were subsequent title holders. Thus, we find no actionable negligence on the part of the Banks or the Tarvers.
¶ 28. Because we find no liability on the part of either the Banks or the Tarvers in this instance, it is unnecessary for us to address Pecanty’s theory with regard to continuing torts and/or latent injuries. Such a discussion would be academic and, under the facts and circumstances of this case, unwise. Regardless of the chancellor’s legal reason for granting summary judgment, she arrived at the right outcome with respect to the Banks and the Tarvers. See Reed v. Weathers Refrigeration and Air Conditioning, Inc., 759 So.2d 521, 526 (¶ 17) (Miss.Ct.App.2000) (“[I]f the judgment of such court can be sustained for any reason, it must be affirmed, ... even though the trial judge based it upon the wrong legal reason.”).
¶ 29. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.

. VFW did not appeal the judgment.