Newell
*v.*
Roberts.

---

## NEWELL *against* ROBERTS and others.

Where it was covenanted between *A* and *B*, late copartners, that *A* should
pay all the debts due from and just claims against the late firm ; in an action
brought by *A* against *B* on the covenant, for non-performance of the stipu-
lations on *B's* part, *A*, to prove performance on his part, offered in evidence
certain accounts against the late firm, receipted in full of *A*, by the creditors
respectively, who were living ; it was held, that such receipts were inadmissi-
ble, being merely the written declarations of third persons, who might be pro-
duced as witnesses.

In a covenant by indenture between *A* and *B*, late copartners as clock-makers,
it was stipulated, that *A* should pay certain claims against the late firm, and
advance certain sums of money to *B*, and also furnish cases for certain clocks
to be made by *B;* and that *B* should have the tools and materials of the late
firm, and therewith make and deliver to *A*, clocks sufficient, at the stipulated
price, to amount to the sums paid by *A*.   To an action brought by *A* against
*B*, on the covenant, *B* pleaded, 1st, that *A* had not performed on his part ;
2ndly, that *A* having neglected to pay the claims against the late firm, a credi-
tor of that firm attached the tools and materials, and thus prevented perform-
ance by *B ;* 3rdly, that *B* made and delivered a certain number of clocks,
when *A* seized the tools and materials and took them out of the possession of
*B*, and thus prevented further performance by him ; 4thly, that *B* having
made and delivered a certain number of clocks, *A* failed to furnish the stipu-
lated cases for the residue, and thus prevented further performance by *B*.
On these pleas issues were joined.   The court instructed the jury, that if per-
formance by *B* had been prevented, by the neglect or by the acts of *A*, their
verdict must be for *B*, otherwise for *A ;* and the jury found a verdict for *B*
on all the issues.   It was held, that the parties having gone to issue on dis-
tinct pleas, alleging distinct facts, they were entitled to have each issue passed

Newell
*v.*
Roberts.

upon separately; and as the charge had not directed this to be done, but authorized a different course, which might do injustice to *A*, a new trial must be granted.

THIS was an action on a covenant, by indenture, entered into, between the plaintiff, on the one part, and the defendants, on the other, on the 24th of *July*, 1818. By this instrument, it was stipulated, That the plaintiff should pay all the debts due from and just claims against the late firm of *Roberts, Ives & Co.*, and advance to the defendants a further sum in money, not to exceed, including said debts and claims, 20,000 dollars; that said money should be paid, 100 dollars, at that time; 400 dollars, in thirty days thereafter; 1000 dollars, in ninety days thereafter; and 1000 dollars at the end of each successive ninety days thereafter, until the whole should amount to 20,000 dollars, including said debts and claims: that all the stock, materials, tools and implements and every other kind of property in any way owned or belonging to the late firm of *Roberts, Ives & Co.* should be the sole and separate property of the defendants, except sufficient, including the tools, for making 2000 clocks, which should be the property of the plaintiff, but should remain in the possession of the defendants, and be by them manufactured into clocks at their own expense; and as fast as said clocks should be completed, one half of the first 300 thereof should be delivered to the plaintiff, at the shop where they were to be made in *Bristol*, and the other half thereof should be the property of the defendants; that three fourths of the remainder of such clocks should be delivered at the price of 14 dollars for each clock, until the clocks so delivered should amount to and pay him all the sums he should have advanced as aforesaid, with the lawful interest thereon; that the plaintiff would in no way interfere or intermeddle with said materials and tools, provided the defendants should deliver to him clocks as aforesaid sufficient to pay said claims and advancements; and when these clocks should have been delivered, all the remainder of them and the other property should belong to the defendants. It was further covenanted between these parties, that said clocks should be eight day, rolling pinioned, brass clocks, every way well made and put in cases, and to go well to the satisfaction of good judges; the plaintiff to furnish cases, except tablets; that said clocks should be made and finished as fast as they could be made,

by faithfully employing constantly ten workmen, exclusive of
the defendants, and those employed in making faces and pin-
ions ; that the plaintiff should have the right of putting look-
ing-glasses in the cases of his clocks ; and that the defendants
should not sell any clocks to any other persons lower than at
the price of 25 dollars each, exclusive of the value of the glass
and case, until one year after the plaintiff should have received
the last of his clocks ; and that the defendants should not
authorize any other person to make and sell clocks in any
way than as aforesaid, nor authorize the looking-glasses to be
used in any other description of clocks than those above men-
tioned, until six months from the delivery of the last of said
clocks to the plaintiff.

The defendants further covenanted with the plaintiff, that
they would, as soon as might be, by employing said workmen
as aforesaid, complete 100 clocks ; then 200, at two successive
times ; and then 300, at each successive time, until the whole
2000 should be completed ; and that the plaintiff should be
paid the whole of his claim out of said 2000 clocks.

The declaration averred, that the plaintiff had kept and per-
formed all the covenants on his part, according to their true
intent and meaning ; and had paid all the debts due from and
just claims against the late firm of *Roberts, Ives & Co.*, and
had advanced and paid to the defendants the whole sum of
20,000 dollars, including said payment of debts and claims
against said late firm ; and then proceeded to allege a breach
on the part of the defendants.

The defendants pleaded eight pleas ; but it is not necessary
to state them all.

The second plea was, that the plaintiff had not fully kept
and performed on his part, what was to be by him done and
performed.

The fifth plea averred, that within a reasonable time, and
within the time specified in the contract, the defendants made
and delivered to the plaintiff 500 clocks, being of greater value
than the money advanced by the plaintiff, or paid for debts ;
that the plaintiff neglecting to pay said debts, one *Moore,* a
creditor of the company, attached the tools and materials left
with the defendants, thus preventing them from fulfilling their
contract.

The sixth plea alleged, that the defendants proceeded to

Newell
*v.*
Roberts.

make and deliver 1000 clocks within the time specified, as fast as they were bound to do, when, on the 1st of *June*, 1819, the plaintiff caused a great part of said tools and materials to be taken out of their possession and kept from them, whereby they were prevented from making more clocks and performing their covenants.

The seventh plea alleged, that the defendants made and delivered to the plaintiff a great number of clocks, and were proceeding to make and deliver the residue ; but the plaintiff neglected to furnish cases, and so the defendants were unable to finish and deliver all said clocks.

On all the pleas, issues were severally joined.

The cause was tried at *Hartford, September* term, 1838, before *Bissell*, J.

On the trial, the indenture set forth in the declaration was produced, and its execution admitted. It was also admitted, that the first instalment of 100 dollars was paid, by the plaintiff, to the defendants, at the execution of the indenture. The plaintiff then offered evidence to prove the payment of the second and third and part of the fourth instalments before the 1st of *June*, 1819, but not at the times when they respectively became payable. The amount of the sums advanced by the plaintiff, was 2372 dollars, 71 cents. The plaintiff also claimed to have proved, that before the commencement of the suit, he had paid debts of *Roberts, Ives & Co.*, mentioned in the indenture, to the amount of 13,610 dollars, 31 cents ; and that of this sum he had paid more than 10,000 dollars before the 1st of *June*, 1819 : that before the 20th of *August*, 1819, the defendants had manufactured a great part of the materials mentioned in the indenture, into clocks, and had, before that time, leased their manufactory, secreted and conveyed away all their property, particularly, all the clocks and parts of clocks they had on hand, and the materials and tools mentioned in the indenture, and had sold such property and converted it to their own use, with the intent to defraud the plaintiff.

The plaintiff also offered in evidence certain *accounts*, stated by the defendants, under their hands, to be due from *Roberts, Ives & Co.* to *Theophilus Smith* and others, workmen, amounting to 1081 dollars, 76 cents, all purporting to be receipted in full of the plaintiff, by the creditors therein named respectively ; one of which receipts bore date the 24th of

*August*, 1818, and the others were without date. With these, the plaintiff offered proof of the hand-writing of said *Smith* and others, they being alive. This evidence being objected to, by the defendants, the judge rejected it, for the purpose of showing payment, but admitted it to show the extent of the indebtedness of *Roberts, Ives & Co.*

The defendants denied, that they had fraudulently conveyed away or converted to their own use any of the materials and tools, as claimed by the plaintiff; or that they had made use of them for any purpose inconsistent with their obligations under the indenture. The defendants also claimed to have proved, that they delivered to the plaintiff 25 clocks, on the 29th of *December*, 1818, and 33 clocks, on the 1st of *June*, 1819 : that on the 9th of *September*, 1818, the plaintiff neglecting to pay the second instalment, they made a written demand of the fulfilment of the contract on his part ; and on the 28th of *December*, 1818, the third instalment not being paid, they made a like demand : that the plaintiff neglected to pay the debts of *Roberts, Ives & Co.*, and that sundry suits were brought against that firm, for debts, which it was the duty of the plaintiff to pay, by means of which the credit of the defendants was injured, and their business greatly embarrassed : that the plaintiff furnished no cases for clocks : that on the 21st of *August*, 1819, one *Moore* brought his writ of attachment against *Roberts, Ives & Co.*, for a debt, which it was the duty of the plaintiff to pay, and attached and removed large parcels of said tools and materials, and on the same day, the plaintiff himself seized and removed a large part of said tools and materials out of the possession of the defendants.

The defendants insisted, that the neglect of the plaintiff to pay the second, third and fourth instalments, when they became payable, and to pay any part of the fifth instalment, and also to pay the debts of *Roberts, Ives & Co.*, and to furnish cases for the clocks, and his acts in seizing the tools and materials, prevented the defendants from performing the covenants on their part.

The plaintiff claimed to have proved, that the defendants were not molested in their persons, by any creditors of *Roberts, Ives, & Co.*, and that the tools and materials seized by the plaintiff and by *Moore*, had been, before the seizure, conveyed away by the defendants, and were taken in the possession of their vendees and assignees.

The plaintiff insisted, that the covenants in the indenture were independent; and that it was not necessary for the plaintiff to aver or prove performance of the covenant to pay the debts of *Roberts, Ives & Co.,* and to advance a further sum to the defendants, which, with such debts, should amount to 20,000 dollars, to entitle him to recover for the sums actually advanced. He further insisted, that the first instalment being paid when the indenture was executed, the second issue must be found against the defendants; and that unless the jury should find, that the plaintiff had prevented performance by the defendants, in the manner stated by them in their pleas, he was entitled to recover.

The defendants, on the other hand, claimed, that the covenants were mutual and dependent; and that the plaintiff was bound to show an entire performance on his part, otherwise he could not recover.

Upon these claims of the parties respectively, the court submitted a single question of fact to the jury, *viz.* whether the defendants had been prevented, by the neglect or by the acts of the plaintiff, from performing the covenants in the indenture on their part; and the court instructed the jury, that if they should find, that the defendants had not been so prevented, by the neglect or acts of the plaintiff, without reasonable cause, their verdict must be in his favour; otherwise in favour of the defendants.

The jury found the first issue for the plaintiff, and the second, fifth, sixth and seventh issues for the defendants. The plaintiff thereupon moved for a new trial, for the rejection of evidence offered by him, and for a mis-direction.

*Hungerford* and *Toucey,* in support of the motion, contended, 1. That the accounts and receipts offered in evidence by the plaintiff, accompanied by proof of the hand-writing of the receipters, should have been received to prove payment. By the law of *Connecticut,* a receipt is a bar—a discharge— a cancellation of the claim—unless taken under such circumstances as would justify the interposition of a court of chancery to set it aside. *Brace* v. *Catlin,* 1 *Day,* 275. *Anderson* v. *Henshaw,* 2 *Day,* 272. *Fuller* v. *Crittenden,* 9 *Conn. Rep.* 401. 406. Now, does not the production of these papers, by the plaintiff, show, that the debts in question were

*discharged* in 1818, according to the contract between these

parties? In all cases where there is an indebtedness to be cancelled, the ordinary evidence of cancellation is admissible to prove it. The parties have virtually agreed, with respect to these claims, that the ordinary evidence of payment shall be binding upon them. *Williams* v. *Innes* & al. 1 *Campb.* 364. *Daniel* v. *Pitt* and *Brock* v. *Kent*, 1 *Campb.* 366. n. *Burt*, admr. v. *Palmer*, 5 *Esp.* 146. The person to whom performance of an act is agreed to be made, is competent to acknowledge such performance. The receipts of these workmen become evidence as a necessary consequence of their authority to receive payment. *Fenner* v. *Lewis*, 10 *Johns. Rep.* 38. 44. *Prather* v. *Johnson* & al. 3 *Har. &. Johns.* 487. 490.

2. That the charge was incorrect.

In the first place, the court should have charged the jury, that the second issue, upon the facts admitted, must be found for the plaintiff. The allegation " that the plaintiff had neglected and omitted to perform *any and each* of them," is disproved, by the performance of *one*. But it was admitted, that the plaintiff paid the first instalment, *viz.* 100 dollars.

Secondly, the charge was erroneous in submitting only a single question of fact to the jury, and that not the issue joined by the parties. It precluded from the consideration of the jury all the other facts upon which the parties were at issue by the pleadings, and which have now been found conclusively against the plaintiff. The charge went beyond the issues joined, and brought into the trial the following grounds of defence, not set up by the pleadings, but set up by parol on the trial. First, " the neglect of the plaintiff to pay the debts of *Roberts, Ives, & Co.*," in consequence of which " sundry suits were brought," " the credit of the defendants injured, and their business grealy embarassed," by which the defendants were prevented from performing. Secondly, the neglect of the plaintiff to pay the second, third and fourth instalments punctually, and his neglect to pay any part of the fifth instalment, by which the defendants were prevented from performing. Thirdly, the seizure and removal by him, of a part of the tools and materials, *without reasonable cause*, from the possession of the vendees, to whom the defendants had sold and conveyed them.

The court ought to have charged the jury, that unless they

*Hartford,*
*June, 1839.*

Newell
*v.*
Roberts.

should find that the plaintiff had prevented the defendants, *in the manner stated in their pleas*, from performing the covenants on their part, those issues should be found against the defendants.

*Butler* and *W. W. Ellsworth*, contra, insisted, 1. That the receipts offered in evidence by the plaintiff, were the mere written admissions, or declarations, of a third person, and, therefore mere, *hearsay*.   This is not one of the excepted cases, in which such evidence is admissible.   3 *Stark. Ev.* 1387.   2 *Stark Ev.* 32.   1 *Phil. Ev.* 74.   *Carrington* v. *Deming,* 12 *Conn. Rep.* 1.   *Fitch* v. *Chapman,* 10 *Conn. Rep.* 8. *Norton* v. *Pettibone,* 7 *Conn. Rep.* 319.   *Boyle* & al. v. *Atly,* 1 *Niel Gow,* 50.   *Cutbush* v. *Gilbert,* 4 *Serg. & Raw.* 551. 556.

2. That if by reason of the negligence or the acts of the plaintiff, performance by the defendants was prevented, the plaintiff cannot recover.   This was the great fact involved in the issues to be tried ; and this was submitted by the charge. The second, fifth and sixth issues being found for the defendants, there is no ground left, on which the plaintiff can recover ; and whether the charge was, or was not adapted to the seventh or any other issue, a new trial will not be granted.

WILLIAMS, Ch. J.   As to the evidence.   As the creditors who received payment were alive, it would seem as if their receipts were not the best evidence which could be produced.   It is their written certificate of the fact of payment.   If admissible, it must be upon the ground that it is the admission of a person interested in the subject against his interest, or of an agent of the defendants.   There is a class of cases where entries by or under the direction of persons in the usual course of their business, have been admitted as evidence of the fact as against third persons ; as where the drayman of a brewer rendered every night his account to his employer, of the persons to whom he had delivered beer in the course of the day. *Price* v. *Torrington,* 2 *Ld. Raym.* 873.   But this has been allowed only when such persons were *dead ;* and so strict has been the rule, that even dangerous sickness, utterly dis-enabling the person from attending, or absence, will not be sufficient to dispense with his oath.   *Harrison* v. *Bladen,* 3

*Campb.* 457.  *Cooper* v.  *Marsden*, 1 *Esp. Ca.* 1.  Upon principles somewhat analogous to the first-mentioned case, the admissions of a former owner of the lands in controversy, who has warranted the title, have been admitted against his grantee. *Norton* v. *Pettibone* & al. 7 *Conn. Rep.* 319.  The case before us is not embraced in the principle of those cases.

It was insisted, however, that by the agreement of the plaintiff to pay the debts of the company, he was constituted their agent; and so these receipts are evidence for him.  The rule undoubtedly is, that what an agent says or does in the course of his agency, constituting a part of the *res gesta*, may be given in evidence against his principal; but what such agent has admitted or related, cannot be given in evidence.  *Betham* v. *Benson*, 1 *Niel Gow*, 45.  *Langhorn* v. *Allnut*, 4 *Taun.* 511. 519.  *The United States* v. *Gooding*, 12 *Wheat*, 463. & seq.  *The American Fur Company* v. *The United States*, 2 *Pet.* 358. 364.

None of the cases cited by the plaintiff's counsel contradict or extend this principle, unless it be the case of *Prather* v. *Johnson* & al. 3 *Har. & Johns.* 487. 490., where it is said, that "if *A*, as surety for *B*, pays a debt due to *C*, on proof of the payment, *A* could recover of *B*, on *C's* saying that *A* had paid it: of course, if *C* wrote that *A* had paid it, surely it is evidence, whether the writing was in a book or letter."  The case was where the surety of a collector, who, by virtue of the statute of the state, brought suit against a man, who had neglected to pay his tax, and the surety paid it.  To prove such payment, a writing was offered, purporting to be an account of such payment, made and signed by *J. H.*, treasurer.  This was objected to; not because it was not proper evidence of the fact, but because there was no evidence that *J. H.* was treasurer, or that this was his signature.  And the court held, that where an act of assembly directs the certificate of a public officer to be evidence, a paper produced with his name, will be evidence *prima facie*, unless the name is proved not to have been signed by him.  Whatever we might, in this state hold, in a similar case, it is apparent, that the facts in that case did not call for any expression of opinion upon the point now before this court.  Nor do we see any thing in the accounts between these parties, constituting *Newell* an agent, more than he was before.  From his relation as a partner, he had a right,

and it was his duty, unless otherwise stipulated, to pay the debts of the company.

But even if *Newell* was the agent of the company, these creditors were not ; and it is *their* certificate which was offered in evidence. It is *Newell's* act, which is to be proved ; but the proof is from the declarations or admisssions of third persons, who might have been called as witnesses ; and how his agency, if he was agent, makes their receipts evidence, has not been shewn.

It has been suggested, that in matters of account, receipts of this kind are always evidence. It ought to be remembered, too, that in matters of account, the parties are also witnesses ; and there is no reason why, when they are under oath, they may not confirm their testimony, with the ordinary vouchers. Before auditors, or a court of probate, the party would swear, that he made the payments charged, and to confirm his oath, would exhibit the receipts. In this case, the receipts are offered, unsupported by oath.

It is said, again, to be matter of great convenience to the party to admit such documents. It may be for one party ; but it may be very inconvenient, and perhaps dangerous, to the other. Under these pleas, the time of payment may be as important as the payment itself ; and if we may presume that no man would acknowledge a payment to himself, unless it was actually made, there could be no such presumption as to the time of such payment. The creditors would have no interest in that subject, and would probably pay no attention to it. But if the receipt is evidence of payment, it is also evidence of the time of payment, at least *prima facie ;* and, of course, the opposite party must be bound by it, unless by accident he has a witness in court to meet it ; whereas, if the creditor were called by the party proving payment, he might be cross-examined as to the time the payment was actually made. And one great object of the rule is, that if the witness is called, he may give some material evidence, from having some acquaintance with the dealings upon which the entries are founded. *Cooper* v. *Marsden*, 1 *Esp. Ca.* 1. This evidence, therefore, was properly rejected.

The plaintiff also objects to the charge of the court, for various reasons. One is, that the court called the attention of the jury to a fact not in issue between the parties, *viz.*, whether

the seizure of the tools was *for a reasonable cause,* or not. The parties were at issue upon one plea, whether performance by the defendants was prevented, by the plaintiff's seizing their tools; and the court left it to the jury, whether performance was prevented, by seizure of the tools by the plaintiff, *without reasonable cause.* This certainly was not an error, if it was an error, of which the plaintiff could complain. Nor shall we examine several other objections, which were made; because we are satisfied, that upon one point there must be a new trial.

There were four pleas upon which the defendants obtained a verdict. These pleas stated a variety of facts, by way of defence. One alleges non-performance by the plaintiff; one excuses performance by the defendants, because the plaintiff having neglected to pay debts as he ought, the tools were seized; another avers, that the plaintiff himself seized the tools; another, that the plaintiff did not furnish the cases, so that the defendants could finish the clocks.

Now, it is apparent, that the strength of the defendants' case rested principally upon the fact, that the plaintiff had, by some act or omission of his, prevented a complete performance by them. The judge, looking at this as the prominent point, and one that might make an end of the case, instructed the jury, that if the defendants were prevented, by the neglect of the plaintiff, in not paying the debts due from the company, or the instalments he was bound to pay, or by the acts of the plaintiff, in seizing and removing the materials and tools, they must give a verdict for the defendants. We are not prepared to say, that the verdict in this case, founded upon this charge, would not do entire justice to the parties in the cause; but in its *consequences,* it may injuriously affect their right, as the facts found may be made use of beyond the present suit. The parties had chosen to go to issue upon distinct pleas, alleging distinct facts, although mostly tending to one point. Under these circumstances, they had a right to an expression of opinion from the triers, upon each of these distinct points. But the charge of the court was calculated to draw the attention of the jury to one only of these points, and to prevent any attention to the others. The acts of the plaintiff might fully justify the omission of the defendants; but still this did not prove all the other issues. Thus, the fact that the plaintiff had prevented the defendants' performance, will not prove that the plaintiff

has neglected to perform, as is averred in the second plea ; nor that an unpaid creditor procured an attachment and seized the goods, as is averred in the fifth plea; nor that the plaintiff *neglected to furnish cases, as the seventh plea* alleges; nor that the defendants made and delivered a great number of clocks, within the time specified, as is averred in several pleas, —the fifth, sixth and seventh. The plaintiff may have prevented performance, and yet may have performed himself; he may have done it, and yet not have attached the tools; he may have done it, and yet the defendants may not have taken a single step on their part, before he did it.

We have examined the sixth plea, to see if the verdict could not, upon the charge, be properly taken upon that issue ; as we might then have granted a new trial only in case the defendants would not consent to confine their verdict to this issue. That plea avers, that the defendants did make and deliver 1000 clocks within the time specified in their covenants, and that the plaintiffs prevented their making more, by taking from their possession a great part of the tools whereby, &c. But by the charge, if the jury found, that by the neglect of the plaintiff in not paying the debts and instalments, *or* in seizing and removing said tools, the defendants were prevented from performance, the verdict must be in their favour. They might then have found a verdict upon this count, without finding the facts relied upon as evidence of it, *viz.* the fact that 1000 clocks had been delivered, or that the tools were taken away. The charge being in the alternative, if they found either the omission of duty charged in some of the pleas, or the wrongful acts alleged in the others, the jury may have, in conformity to the charge, founded their verdict upon one only of the alternatives mentioned in it, and yet have in fact found several issues, some on one, and some on the other of these alternatives ; and thus injustice may be done to the plaintiff. We think, therefore, there must be a new trial.

In this opinion the other Judges concurred.

New trial to be granted.