LUIGI MILARDO ET AL. *vs.* VINCENZO BRANCIFORTE ET AL.

First Judicial District, Hartford, January Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

694

Argued January 2d—decided April 6th, 1929.

*Don Cambria* and *Bernard A. Kosicki,* for the appellants (plaintiffs).

*Thomas C. Flood,* for the appellees (defendants).

WHEELER, C. J.   The complaint alleges that the plaintiffs were in possession of certain land fronting easterly on the highway (known as Main Street) in the town of Cromwell and that the defendants, on October 1st, 1927, entered upon this land, tore down a fence which for eighteen years had been the boundary line between the land of defendants and plaintiffs and erected a building and a new fence on the plaintiffs' land thereby trespassing upon a strip of the plaintiff's land two hundred and twenty-five feet in length and seven feet in width on the easterly or highway line and running to a point two hundred and twenty-five feet west of the easterly boundary line of the plaintiffs, and have since held the same by force.

The plaintiffs claimed: (1) Damages.   (2) A mandatory injunction commanding defendants to move the fence and building so erected, and (3) such other relief as plaintiffs are entitled to in law and equity. The defendants admitted plaintiffs' possession of the

land described in paragraph one of the complaint and denied the other paragraphs. The pleadings did not put the title to this strip of land directly in issue. The action is one for trespass to the possession; the question of title is only incidental to this. The parties tried the case as though defendants had pleaded their better title or superior right of possession in defense and the trial court disposed of the case as the parties tried it, and we shall not consider this point of pleading made apparently for the first time in this court.

The plaintiffs have owned in fee a part of the land described in the complaint by record title since 1910, and claim to have owned this strip by adverse possession by an occupancy under claim of right from 1908 to 1927 when defendants by force dispossessed them. The defendants purchased the land adjoining the plaintiffs' land in the early part of 1925. By the record title they were the owners of the strip of land which plaintiffs claim to own by adverse possession. Upon the record the defendants' lot fronted on Main Street 41.7 feet and the plaintiffs' lot 43 feet on this highway.

The trial court reached the conclusion that the plaintiffs did not sustain the burden of proof as to the length of time they had been in possession of this strip of land, nor that the new boundary fence erected by these parties in 1926 was on the same line as the old fence, and found that the plaintiffs had produced no evidence that the fence was a straight line.

Error is assigned as to a number of the findings as made by the court and as to the failure to find a number of paragraphs of the plaintiffs' draft-finding. The court finds that the fence was built in 1908, as the plaintiffs claim, but not as they claim built as a boundary between the land of the plaintiffs' and the defendants' predecessors in title, but on or near this

boundary. It appeared in evidence that in 1905, Luigi Milardo, one of the plaintiffs, was a tenant of the premises which he purchased in 1910, and still owns, and that one Neapolitano, who was in Europe at the time of the trial, owned in 1908 the premises adjoining the defendants on the south and that there was then no division fence between these two properties. At that time Neapolitano, defendants' predecessor in title, built a fence between his own premises and those adjoining him on the north, then owned by one Pierson and occupied by the plaintiffs as tenants. There is no contradiction of this in the evidence and it has every indication of being reliable. It also appears that at least two post holes of this fence existed in its then location until 1927 when the fence had become decayed and broken down. That the fence was built as and for a division fence between Milardo and Neapolitano is a necessary inference and the finding should be corrected to state this obvious fact. The trial court concluded that the plaintiffs had not established the location of the old fence and that the only evidence as to where this fence was located was the dotted line on the map, Exhibit A, which the surveyor drew from two posts which the plaintiff informed him were a part of the old fence. That the old fence stood upon the line it had been built upon until it was replaced by a new fence built in 1926 by agreement of plaintiffs and defendants is uncontradicted and is incontestable. The parties place the year in which the fence was built as 1926, while the surveyor who was employed by the plaintiffs testifies that he found, in October, 1926, on the ground at the west end of the south line of plaintiffs' premises two posts, sixty feet apart and saw that the fence ran nearly to the highway on the east. From these posts he concluded that the line of the fence was straight and so represented it on the map, Exhibit A.

Luigi Milardo, one of the plaintiffs, testified that the old fence ran on the line indicated on the dotted line on the map. Moreover, the lots of the parties were a part of a tract divided into nine lots with one exception having a frontage of from forty to forty-three feet, and having a varying depth; from this division the court might reasonably have drawn the inference that the fence lines between these lots would run in substantially a straight line, as upon the map they did. The defendant Vincenzo Branciforte testified that when he bought the premises south of plaintiffs' land there were the partial remains of an old fence between his own place and the plaintiffs', but that it could not be seen very well. The conclusion of the trial court that the only evidence produced by plaintiffs as to the location of the old fence was the dotted line delineated on this map and that plaintiffs had produced no evidence that this fence was a straight line was not justified. The dwelling of defendants encroaches upon the land claimed by the plaintiffs and formerly enclosed by the old fence at the west end of the house 4.5 feet and at the east end 4.6 feet. There should be added to the finding the fact that the defendants' house and the new fence erected by them encroach upon this strip of land.

The defendants offered no evidence of the existence or condition of the old fence or in contradiction of plaintiffs' claim to possession of this strip of land prior to the time when plaintiffs and defendants first discussed the building of a new fence in place of the old, which was in 1926. The parties built this new fence after the surveyor had located the line as he said by the two posts on the west end of the south line of plaintiffs' premises and by what he saw on the ground. The defendants testify the new fence was not put on the same line as the old fence, while the plaintiffs testify it was and the surveyor's testimony tends to

corroborate the plaintiffs' claim. Since this cannot be claimed to have been an admitted or undisputed fact, we cannot under our rule correct the finding in this particular. The erection of the defendants' dwelling required the demolition of plaintiffs' greenhouse. The defendants' counsel admitted the old fence was taken down and the house built over the old fence line. This is a practical admission of at least a part of the plaintiffs' contention in this case. All of this land so encroached upon by the dwelling was thus within the old fence line. As to this, plaintiffs had obtained title by adverse possession. If it were true that the old fence line included more land than the new fence line, to that part formerly included within the old fence line and later included within the new fence line the plaintiffs' title by adverse possession has not been contested by the defendants. So that if the defendants' contention is accepted, that the new fence was not built on the line of the old but was built somewhat north of it, there would remain as an uncontested fact in the case that the plaintiffs had been in the exclusive possession of so much of this strip as was north of this new fence line under a claim of right for over fifteen years. And whether the new fence was erected precisely upon the line of the old fence would be immaterial, since the title by adverse possession had ripened prior to the erection of the new fence. *Sherman* v. *Kane,* 86 N. Y. 57, 64; *School District* v. *Benson,* 31 Me. 381.

The plaintiffs claimed on the trial that the grantor of the defendants at the time of his conveyance had been ousted of the possession of this strip of land and therefore defendants' deed as to this strip was a nullity. General Statutes, § 5098, provides: "All conveyances and leases, for any term, of any building, land or tenement, of which the grantor or lessor is ousted by the

entry and possession of another, unless made to the person in actual possession, shall be void." The plaintiffs were in possession of whatever part of this strip was within the old fence line in 1925 at the time defendants purchased it; the grantor of the defendants not being in possession of this strip at the time of the delivery of his deed to the defendants the deed as to the part of it covering this strip is void. The conveyance may be void as to the part comprised in this strip and valid as to the other part of the conveyance of which the grantor of the deed to the defendants had the possession at the time of the conveyance. *Goodman* v. *Newell,* 13 Conn. 74.

Two other matters are necessary to refer to as likely to arise upon a new trial. Damages for the destruction of the glass covered frame or greenhouse and the plants within constitute special damage and must be alleged in the pleading before judgment can be rendered therefor. *Eldridge* v. *Gorman,* 77 Conn. 699, 701, 60 Atl. 643.

The important witnesses were in a number of instances unable to competently express themselves in the English language; in some instances their testimony was taken without an interpreter, and even when taken with an interpreter was far from satisfactory. The result is an incomplete record and an abbreviated finding. For example, the finding does not disclose what the map reveals, that the addition of the strip claimed by the plaintiffs would reduce the width of the Neapolitano lot to a width of 34.7 feet and increase plaintiffs' lot to a width of 50 feet which would have been to the serious disadvantage of Neapolitano, who appears to have been at one time the owner of the nine lots in this tract. Nor does it disclose the location of the Neapolitano house while the deed fixes the boundary between the plaintiffs and Neapolitano's lot as

half way between the house of the plaintiffs and that of Neapolitano. Neither is the conduct of the plaintiffs portrayed, in standing by and allowing defendants to erect their house before asserting their claim as made in this case.

Considerations affecting the equities of the situation are almost entirely omitted from the finding. The instances of omission cited do not in the main appear in the evidence. A new trial will give the parties the opportunity of having their case presented more fully on the record on appeal, so that a more satisfactory judgment can be rendered than upon the present record.

There is error and a new trial is ordered.

In this opinion the other judges concurred.