SERGIO FRANCHI ET AL. *v.* FARMHOLME, INC., ET AL.
(10597)

HEALEY, PARSKEY, SHEA, GRILLO and BORDEN, Js.

Argued April 7—decision released August 23, 1983

*Raphael Korff,* for the appellants (defendants).
*James F. Brennan, Jr.,* for the appellees (plaintiffs).

PARSKEY, J. On June 30, 1977, the defendant, Farmholme, Inc. (Farmholme), purchased a 200 acre estate in Stonington for $300,000, financed by $280,000 in mortgages: This property included a main house, a guest house, a caretaker's cottage and various outbuildings. Thereafter, around June, 1978, and for some time prior to September 6, 1979, the defendant John W. S.

McCormick, a business associate of the defendant[1] Lewis J. Payton, president of Farmholme, was permitted to occupy the premises with the obligation to pay the mortgage together with all costs and expenses incidental to the property. The first mortgage became delinquent. In March, 1978, foreclosure proceedings were instituted and a foreclosure by sale was ordered. In August, 1979, approximately one month before the scheduled foreclosure sale, the plaintiff, Sergio Franchi, met the defendants McCormick and Payton through Anthony D. Pascucci, a mutual acquaintance of Franchi and McCormick. Discussions and negotiations looking to the purchase of the premises followed. On September 6, 1979, Farmholme, acting by its president, Payton, conveyed the premises by warranty deed to Franchi and Edward Traubner, Franchi's business manager, for $395,000. On February 13, 1980, the plaintiffs, Franchi and Traubner, granted Farmholme the option[2] to repurchase for $475,600 by September 8, 1980, the entire premises sold except for a small parcel of unimproved road frontage. The defendants claim that the transaction was not a sale, but actually a loan and that the deed-option vehicle really masked, under coercive circumstances because of the defendants' financial problem, a usurious arrangement. At trial, they accordingly pressed, inter alia, their claim of an equitable mortgage. See *Guilford-Chester Water Co.* v. *Guilford,* 107 Conn. 519, 141 A. 880 (1928).

Under an arrangement between the parties, McCormick and his family continued to remain on the premises in the main house. Franchi occupied the guest home on occasion. Pursuant to an undertaking by McCormick to maintain the property, he hired Robert Conley as caretaker. Early in 1980, relations between McCormick

[1] At the trial, McCormick testified that his business was that of a "real estate broker."

[2] This option was never exercised.

and Conley became strained allegedly because of McCormick's refusal to pay $25,000 that Conley lent to him. Conley then became employed by Franchi as caretaker for the premises and was in his employ at the time of trial. Conley testified that McCormick "never terminated" his employment, but he was hired by Franchi to remain as caretaker when the latter learned he intended to leave. Although McCormick "constantly" asked Conley when he was going to leave, Conley did not tell him that he was now employed by Franchi because, Conley testified, Franchi's attorneys informed him they would notify McCormick by mail of Conley's employment by Franchi. McCormick wrote Conley telling him he expected him to leave and be off the premises by January 31, 1980. Conley did not leave and consulted legal counsel about recovering from McCormick the money he lent him.

On March 24, 1980, the defendants instituted eviction proceedings against Conley, and on May 13, 1980, they cut off the utilities to his house. On May 16, 1980, the plaintiffs sought and obtained an ex parte injunction from Judge Spallone, who waived the requirement of a bond.[3] Thereafter, on June 12, 1980, the defendants filed their motion to dismiss the alleged cause of action because the "plaintiffs are not inhabitants of the state and no bond for prosecution or recognizance was taken before said process was issued, as required by the statutes (Sec. 52-185) . . . ." The defendants also

---

[3] General Statutes § 52-472 provides: "Sec. 52-472. BOND ON ISSUE OF TEMPORARY INJUNCTION. No temporary injunction may be granted, except in favor of the state or of a public officer thereof in respect to any matter of a public nature, until the party making application therefor gives bond, with surety satisfactory to the court or judge granting the injunction, to the opposite party, to answer all damages in case the plaintiff fails to prosecute the action in which the injunction is applied for to effect; provided a bond need not be required when, for good cause shown, the court or a judge is of the opinion that a temporary injunction ought to issue without bond."

filed a motion to dissolve the temporary injunction. On June 24, 1980, the plaintiffs, reciting that they were acting pursuant to Practice Book § 175 and General Statutes § 52-128, amended their writ, summons and complaint "by adding thereto the recognizance appended . . . ."[4] This amendment, which was filed within thirty days of the return date,[5] was filed prior to the court's decision denying the motion to dismiss. The motion to dissolve the temporary injunction was also denied. On June 30, 1980, the defendants claimed the case for the jury docket.

Both parties, by subsequent pleadings including the defendants' special defense of equitable mortgage and their counterclaim,[6] claimed "title" to and exclusive possession of the premises. Both parties also sought an order directing the other to vacate the premises. Thereafter, the court, *Hendel, J.,* granted the plaintiffs' motion to strike[7] the case from the jury docket.

---

[4] The recognizance appended to the "amendment" was the following:

"You, Thomas A. Bishop, a substantial inhabitant of this state, acknowledge yourself bound to the defendants in this action in a recognizance of $150 that the plaintiffs in this action shall prosecute the action which they have commenced against the said defendants at the superior court to be holden at New London, in and for the Judicial District of New London, on June 24, 1980, to full effect and that they shall pay any costs for which judgment may be rendered against them thereon.

"Taken and acknowledged at Groton, Connecticut, on the 18th day of June A.D., 1980, before me, Thomas B. Wilson, Commissioner of the Superior Court."

[5] The return date was June 24, 1980.

[6] In the record the counterclaim is sometimes referred to as the cross complaint.

[7] The plaintiffs' "Motion to Strike from Jury Docket" noted the following:

"The plaintiffs in the above entitled action move to strike the case from the jury docket for the reason that the case presents questions properly cognizable in equity and is not triable by jury under § 52-215 of the general statutes.

"A memorandum in support of this motion is attached hereto.

THE PLAINTIFFS
By James F. Brennan, Jr.
Their Attorney"

The case was then tried to the court, *Quinn, J.,* who found for the plaintiffs on their complaint and against the defendants on their counterclaim. In doing so, he observed in his memorandum of decision that the case "resolved itself to the issue of ownership of the premises and which party should be made to vacate the premises." The trial court found, inter alia, that the transaction was a sale of the real estate with an option to repurchase that had expired, that the sale "was executed at arms length with both parties represented by attorneys," and that the defendants had not sustained their burden on their special defense of an equitable mortgage. The plaintiffs were adjudged to have the right of exclusive ownership and possession of the premises as against the defendants. This appeal followed.

On appeal, the defendants have claimed a number of errors in the trial court. They are: (1) that the original writ, summons and complaint presented by the plaintiffs to Judge Spallone was void ab initio and furnished no legal basis for issuing an injunction or any order; (2) that the striking of the defendants' timely claim for the jury docket denied them their constitutional right to a trial by jury; and (3) that the transaction between the parties involved an equitable mortgage as a matter of law. An additional claim regarding an evidentiary ruling we do not consider for failure of the defendants to comply with Practice Book § 3060F (c) (3). The remaining claims are subsumed under the three categories set forth above.

We first take up the claim in which the defendants attack jurisdiction. See *Salamandra* v. *Kozlowski,* 173 Conn. 136, 139, 376 A.2d 1103 (1977); *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 616, 363 A.2d 1038 (1975). They argue that General Statutes § 52-185 requires a bond for prosecution *"before proc-*

*ess is signed,* if the plaintiff is not an inhabitant of this state." It appears that both plaintiffs were from California.[8] The plaintiffs' brief admits that the process initially contained no recognizance. The defendants claim that because the original writ, summons and complaint submitted to Judge Spallone did not comply with the statute, the writ was "absolutely invalid and void ab initio because of [the] lack of bond for prosecution or recognizance before it was signed and therefore the court and Judge Spallone were without jurisdiction." We do not agree.

Section 52-185 (a) provides in part that "[i]f the plaintiff in any civil action is not an inhabitant of this state . . . the plaintiff shall, before the process is signed, enter into a recognizance to the adverse party with a financially responsible inhabitant of this state as surety . . . that the plaintiff shall prosecute his action to effect and answer all costs for which judgment is rendered against him. . . ." Initially, the plaintiffs did not comply with this provision. After the defendants filed their motion to dismiss, but before a decision thereon, the plaintiffs filed a recognizance in the statutory form. See General Statutes § 52-185 (b). They did this pursuant to General Statutes § 52-128 and Practice Book § 175. This statute permits the plaintiff to "amend any

---

[8] The application for the ex parte temporary injunction included a "Motion for Waiver of Bond" which the court, *Spallone, J.,* granted. That motion recited the following:

"The plaintiffs, by their attorney, respectfully request that the court waive any requirement that they post a bond in this matter because

"(1) they are both presently in California;

"(2) the relief sought will not cause any monetary loss to the defendants even if the plaintiffs do not prevail;

"(3) they will upon proper motion by the defendant post any bond the court may order.

"WHEREFORE, the plaintiffs respectfully request that the requirement of the bond be waived as permitted by Section 52-472 of the Connecticut General Statutes."

defect, mistake or informality in the writ, complaint, declaration or petition . . . within the first thirty days after the return day . . . ." The Practice Book rule is to the same effect. Section 52-185 (d)[9] provides that "[i]f there has been a failure to comply with the provisions of this section, or if the authority signing a writ has failed to certify in accordance with any statute or rule that he has personal knowledge as to the financial responsibility of the plaintiff and deems it sufficient, the validity of the writ and service shall not be affected unless the failure is made a ground of a plea in abatement. . . ."[10] The defect in question was, in fact, made the ground of a motion to dismiss. This subsection of the statute also provides that "[i]f such plea in abatement is filed and sustained or if the plaintiff voluntarily elects to cure the defect by filing a bond, the court shall direct the plaintiff to file a bond to prosecute in the usual amount. Upon the filing of such bond, the case shall proceed in the same manner and to the same effect . . . in all other respects as though the failure had not occurred. . . ." In this case, the plaintiffs "voluntarily" elected to cure the "defect" after the motion to dismiss was filed and before it was acted upon. They did so within thirty days after the return day. The recognizance filed was in the statutory form. See General Statutes § 52-185 (b). We find no error. See *Sheehan* v. *Zoning Commission,* 173 Conn. 408, 378 A.2d 519 (1977); 1 Stephenson, Conn. Civ. Proc. (2d Ed. 1970) § 79 (g).

[9] We note that what is now § 52-185 (d) was added to this statute in 1939, some years after the decision in *Morse* v. *Rankin,* 51 Conn. 326 (1883), cited as authority by the defendants. See also 1 Stephenson, Conn Civ. Proc. (2d Ed. 1970) § 79 (g).

[10] As of July 1, 1978, the plea in abatement as well as the motion to erase are no longer permitted under our rules of practice. The motion to dismiss was properly utilized by the defendants in asserting this claim.

Next, we take up the defendants' claim that the court erred in striking their timely claim of the case for the jury, thus denying them, they argue, their constitutional right to have questions of fact in this case determined by a jury. The plaintiffs' first response to this claim is that we should not review this claim because the defendants did not take a timely appeal "from this interlocutory but final decision, nor did they preserve their right to do so." We disagree with the claim that the striking of the case from the jury docket constituted a final judgment to which the requirements of Practice Book § 3001 would apply. A ruling granting a motion to strike a case from the jury list does not "conclude the rights of the parties so that further proceedings would not affect them. The parties were still in court; the issues in the case were still open and might be fully litigated . . . . [Therefore,] [t]he ruling of the trial court was not such a final judgment as afforded the basis for an appeal to this court." *Beach* v. *Beach Hotel Corporation,* 115 Conn. 708, 163 A. 416 (1932). Such a ruling is, therefore, properly reviewable upon an appeal from the final judgment on the merits of the case. *Beach* v. *Beach Hotel Corporation,* supra, 709.

It must be recognized that even under our state constitution no party has a right to trial by jury in an equitable action.[11] *Gluck* v. *Gluck,* 181 Conn. 225, 228, 435 A.2d 35 (1980); *United States Fidelity & Guaranty Co.*

[11] The United States constitutional guarantee of a right to a jury trial established by the seventh amendment applies only in the federal courts. See *Olesen* v. *Trust Co. of Chicago,* 245 F.2d 522, 524 (7th Cir.), cert. denied, 355 U.S. 896, 78 S. Ct. 270, 2 L. Ed. 2d 193 (1957); *Gluck* v. *Gluck,* 181 Conn. 225, 227, 435 A.2d 35 (1980).

The United States Supreme Court has said that "the Seventh Amendment was never intended to establish the jury as the exclusive mechanism for factfinding in civil cases." *Atlas Roofing Co.* v. *Occupational Safety & Health Review Commission,* 430 U.S. 442, 460, 97 S. Ct. 1261, 51 L. Ed. 2d 464 (1977).

v. *Spring Brook Dairy, Inc.,* 135 Conn. 294, 297, 64 A.2d 39 (1949). This principle implicates the accepted proposition that "in the absence of a constitutional or statutory provision, a jury forms no part of the equity system; that under that system the court has power to determine all issues, and that no party is entitled as of right to have any issue tried by a jury." *Meriden Savings Bank* v. *McCormack,* 79 Conn. 260, 262, 64 A. 338 (1906); see *Savings Bank of New London* v. *Santaniello,* 130 Conn. 206, 209, 33 A.2d 126 (1943). Indeed, because "issues of fact in equity were determined by the court long before the adoption of our Constitution," the constitutional provision does not concern such issues. *Meriden Savings Bank* v. *McCormack,* supra. While "equitable actions, as such," are not within this constitutional requirement, the protection of the constitutional right of a jury trial "cannot . . . be avoided by presenting in an equitable action distinct issues which in 1818 were triable to a jury. *Berry* v. *Hartford National Bank & Trust Co.,* 125 Conn. 615, 618, 7 A.2d 847 [1939]; *National Bank of Commerce of New London* v. *Howland,* 128 Conn. 307, 310, 22 A.2d 773 [1941]; *Savings Bank of New London* v. *Santaniello,* 130 Conn. 206, 208, 33 A.2d 126 [1943]." *United States Fidelity & Guaranty Co.* v. *Spring Brook Dairy, Inc.,* supra, 297.

Our case law has spoken to the resolution of factual issues in the context of actions essentially equitable or essentially cognizable at law. In *National Bank of Commerce of New London* v. *Howland,* supra, 310, we said: "Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. *Doris* v. *McFarland,* 113 Conn. 594, 608, 156 Atl. 52 [1931]. Where, however, the essential basis of the action is such that the issues presented would be

properly cognizable in an action of law, either party has a right to have the legal issues tried to the jury, even though equitable relief is asked in order to give full effect to the legal rights claimed; *Berry* v. *Hartford National Bank & Trust Co.,* 125 Conn. 615, 618, 7 Atl. (2d) 847 [1939]; *LaFrance* v. *LaFrance,* 127 Conn. 149, 152, 14 Atl. (2d) 739 [1940]; and where the controlling issue is based upon a claimed legal title to real estate and that is contested, equity will not ordinarily adjudicate the issue but will leave the question of title to be determined as an issue at law, and such an issue is of right triable by jury; *Miles* v. *Strong,* 62 Conn. 95, 104, 25 Atl. 459 [1892]; *Roy* v. *Moore,* 85 Conn. 159, 167, 82 Atl. 233 [1912]; *Welbrot* v. *Levenberg,* 98 Conn. 217, 222, 118 Atl. 911 [1922]."

Against the background of the foregoing principles, we look to the pleadings in this case. "[T]he true test of a right to a jury trial is whether the cause of action stated (rather than merely the relief claimed) is essentially legal as distinguished from essentially equitable." *Flanigan* v. *Foley,* 20 Conn. Sup. 12, 13, 119 A.2d 741 (1955); see *National Bank of Commerce of New London* v. *Howland,* supra; *LaFrance* v. *LaFrance,* supra, 152; *Berry* v. *Hartford National Bank & Trust Co.,* supra, 618. "Under our law the form of relief demanded makes little difference on the question of whether a case is entitled to a jury trial." *Fitzgerald* v. *Sullivan,* 12 Conn. Sup. 206, 206–207 (1943).

Both the complaint as amended and the counterclaim must be examined. An inspection of the complaint as amended discloses that the plaintiffs claimed ownership of the premises by a warranty deed in September, 1979, from Farmholme, that by verbal agreement between the plaintiffs and Farmholme the defendants McCormick "were to be allowed to continue to live" in one of the houses (the main house) on the premises

until September 8, 1980, and still do so, and that the plaintiff Franchi has "from time to time resided" in the guest house thereon. It further alleges that one Conley, his wife, and two minor children have occupied, since November, 1979, the caretaker's house during which time Conley and his wife "have performed or attempted to perform" maintenance and housekeeping duties for most of the premises, but that since March 5, 1980, the defendants "by intimidation and threats" have attempted to force the Conley family to vacate the premises and have interfered with the performance of their duties as employees of the plaintiffs. The plaintiffs allege that on May 13, 1980, the defendants John and Victoria McCormick, personally and through representatives, disconnected the electricity and water supply to the caretaker's house and that, on the next day, these defendants and the defendant Payton (individually and for Farmholme), personally as well as through their representatives, refused to allow the plaintiffs and their representatives to reconnect such utility services and threatened to disconnect them if they were restored. It is claimed that these actions of the defendants put the plaintiffs in danger of losing Conley, a valuable employee, because the health and safety of his family were being threatened and that this loss would seriously affect the value of their property as well as its enjoyment which, in turn, would cause them irreparable harm for which they have no adequate remedy at law.

In passing, we do note that their original complaint asked for permanent and temporary injunctive relief.[12]

---

[12] The relief sought was the following: restraining the defendants and their representatives "from preventing or interfering with" the efforts of the plaintiffs and their representatives to provide electrical and water service to the caretaker's house and the guest house; restraining the defendants and their representatives from "locking or otherwise preventing . . . access" by the plaintiffs and their representatives to the well house, barn

In their amendment to the complaint, the plaintiffs also sought an order "[o]rdering the defendants to vacate the premises forthwith."

The defendants filed an answer admitting the conveyance to the plaintiffs as alleged and putting in issue the remaining allegations of the complaint. They interposed a special defense alleging their ownership, that the deed alleged was not intended as an absolute conveyance but was intended as a mortgage to secure a debt and that the deed was a vehicle used to evade the usury statutes.

They also filed a counterclaim alleging that they still own the property and are in possession, that the warranty deed given the plaintiffs was really a mortgage and served to carry out the plaintiffs' unconscionable "loan." They allege that the option agreement to repurchase was part of the plaintiffs' plan to "evade usury laws and to defraud defendants." They also claim that Franchi, "by false representations and guile," got permission to occupy the guest home temporarily "as a guest"; that he now claims the rights to permanent occupation; and that he has harassed the McCormick family and that he has conspired with Conley, whom he now employs, and others to prevent the defendants from the use and enjoyment of their home, "all of which was planned and contrived to defraud the defendants."

By way of relief the defendants asked for a judgment holding that the transaction between the parties was an equitable mortgage and declaring that it was

and other outbuildings on the premises; restraining the defendants and their representatives from "harassing, threatening or molesting" any of the Conley family or the plaintiffs' employees, as well as not interfering with such employees' efforts to maintain, repair and improve the plaintiffs' property except the interior of the main house; and restraining the defendants from bringing anyone on the plaintiffs' property to do any work except for housekeeping services at the main house.

intended and contrived to evade the usury laws. They also sought an order that the plaintiffs be required to reconvey the entire premises and "[a] temporary and permanent injunction ordering plaintiffs, their agents, servants . . . guests . . . to vacate said premises . . . to restore the premises to its original condition and to bring back certain machinery and equipment . . . that were removed."

In this case legal title is not in dispute. In paragraph 1 of the complaint the plaintiffs allege that Farmholme conveyed the subject property to the plaintiffs by warranty deed. "To 'convey' real estate is, by an appropriate instrument, to transfer the legal title to it from the present owner to another." *Abendroth* v. *Greenwich,* 29 Conn. 356, 365 (1860). In their answer the defendants admitted this paragraph and such admission was conclusive upon them. *Lutkus* v. *Kelly,* 170 Conn. 252, 257, 365 A.2d 816 (1976); *Bridgeport* v. *Stratford,* 142 Conn. 634, 646, 116 A.2d 508 (1955).

The essence of the dispute is contained in the defendants' special defense. Paragraph 1 of the defense alleges that the defendants are "the owners of and in possession of all the premises described in the complaint." Paragraph 2 spells out the quality of that ownership. It alleges that "[t]he deed referred to in paragraph 1 of the complaint was delivered to the plaintiffs for grossly inadequate consideration, was never intended as an absolute conveyance; was, in fact, intended as security for a debt and therefore must be regarded as a mortgage." Here again the defendants concede that they intended to transfer legal title to the plaintiffs but only as security for a debt. They allege that the deed, though absolute on its face, must be regarded as a mortgage.

In paragraph 6 of their counterclaim the defendants allege further that the transaction which purportedly gave the defendants a right to repurchase the property for a certain sum was in reality "made, intended and contrived by the plaintiffs to evade usury laws and to defraud defendants." In their claims for relief the defendants seek a judgment declaring, inter alia, that the transaction by and between the parties was, in fact, an equitable mortgage and requiring the plaintiffs to reconvey the subject premises to the defendants in the entirety. The defendants' claims are equitable. Issues of fact arising upon such claims are not triable by jury as a matter of right. *Purdy* v. *Watts,* 91 Conn. 214, 217, 99 A. 496 (1916); *Standard Co.* v. *Young,* 90 Conn. 133, 137, 96 A. 932 (1916). Such claims include those involving equitable title to real property. *Surgett* v. *Lapice,* 49 U.S. (8 How.) 48, 65, 12 L. Ed. 982 (1850); 65 Am. Jur. 2d, Quieting Title § 83; annot., 117 A.L.R. 9, 14–16.

Ordinarily when we refer to a person as having title to land we mean that he has both the legal and beneficial interests in it. *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 38, 238 A.2d 410 (1968). "He who has the possession, the right of possession and the right of property has a perfect title." *Shelton* v. *Alcox,* 11 Conn. 240, 249 (1836). But the legal and beneficial interests are not one and the same. The trial court observed that the dispute involved the issue of ownership of the subject premises, and in one sense that is so. When one person has legal title and the other claims to have equitable title which the first person denies, there is a dispute about ownership but that dispute does not necessarily involve legal title especially if legal title is admitted. It is only when legal title is in dispute that the issue of fact in that dispute is triable by jury. Indeed in an action of ejectment if the plain-

tiff's legal title is not disputed, that title, in the absence of an agreement to the contrary, would draw to it the right to immediate possession and the plaintiff would be entitled to judgment as a matter of law. See *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 218, 455 A.2d 857 (1983). By contrast, ejectment is not appropriate for the assertion of a mere equitable right. *Walsh* v. *Feustel,* 93 Conn. 366, 370, 105 A. 696 (1919).

The principal defendant is Farmholme. The other defendants are Lewis Payton, president of Farmholme, and John and Victoria McCormick. Although the McCormicks reside on the property they assert no independent right of possession. Thus the claims of Payton and the McCormicks rise or fall with Farmholme's. Whether viewed on the basis of the state of the pleadings or of the claims advanced at the trial there was no issue of fact properly triable by jury.

The defendants assert finally that the transaction was intended to be an equitable mortgage. They claim that the evidence presented to the court could not possibly lead to any other logical conclusion than that the entire transaction was intended to be refinancing or an equitable mortgage. We are unpersuaded.

At the outset we note that the defendants do not seriously challenge the legal principles applied by the trial court. In essence the defendants ask us to retry the case. This we will not do. "The controlling consideration in determining whether a transaction is a sale or a mortgage is the intention of the parties, ascertained in view of all the circumstances, as to the purpose which the transaction is to effectuate." *Guilford-Chester Water Co.* v. *Guilford,* 107 Conn. 519, 527, 141 A. 880 (1928). Intention is an inference of fact. *Hughes* v. *Contemporary Mission, Inc.,* 180 Conn. 150, 152, 429 A.2d 827 (1980). As such, the findings of the trial court

may only be overturned if clearly erroneous. Practice Book § 3060D; *Gallicchio Brothers, Inc.* v. *C & S Oil Co.,* 191 Conn. 104, 107, 463 A.2d 600 (1983). Further, an examination of the memorandum of decision indicates that the court found the credibility of the witnesses to be essential. "It is axiomatic that it is in the province of the trial court to assess the credibility of witnessess." *Hughes* v. *Contemporary Mission, Inc.,* supra, 151.

On the evidence before it, the trial court could reasonably have found, as it did, that this transaction was a sale of real estate between the parties with an option to repurchase that had expired rather than an equitable mortgage.

There is no error.

In this opinion SHEA and BORDEN, JS., concurred.

ARTHUR H. HEALEY, J. (dissenting). I dissent because I believe that the defendants were denied their constitutional right of trial by jury.

The majority states that the legal title is not in issue and, in doing so, points to the admission of paragraph 1 of the complaint as being conclusive upon them. They "show" this admission up by pointing out that the "essence of the dispute" is in the defendants' special defense which "spells out the quality of that ownership" they allege in paragraph 1 of that defense.[1] They again characterize for their purposes certain portions of the counterclaim without setting out that there again the defendants allege that "[a]t all times pertinent, defendants owned, *still own* and are in possession of

---

[1] Paragraph 1, in full, alleges: "At all times pertinent, defendants were and still are the owners of and in possession of all the premises described in the complaint."

premises described in plaintiffs' complaint . . ." which the plaintiffs deny. (Emphasis added.) The defendants could hardly have denied the existence of the warranty deed alleged in paragraph 1. In their counterclaim,[2] however, a separate cause of action, they allege ownership and possession. If these were said to be inconsistent pleadings, it would be the first time this claim is made. There is not even a clue of the weakest sort of any such claim by the parties in the trial court, in the briefs, or in the argument before us as to that effect. *All* the pleadings should be read in the light of the claims of the parties; *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 4–5, 327 A.2d 583 (1973); not just some of them.

The trial court's memorandum of decision begins by stating clearly that "the case has resolved itself to the issue of ownership of the premises and which party should be made to vacate the premises," and it ends by stating that "[j]udgment will enter for the plaintiff with the right of exclusive ownership and possession of the premises as against the defendants . . . ." The judgment file demonstrates exactly the same. In addition, the plaintiffs' brief states that "[b]oth parties, by subsequent pleadings, claimed title to and exclusive possession of the property and each sought an order directing their opponents to vacate the premises." Significantly, and it cannot be oversight, the plaintiffs never suggested in their brief nor in argument that the defendants' answer to paragraph 1 put the issue of title to rest at all. We are not, under such circumstances,

---

[2] " 'A counterclaim is a cause of action existing in favor of a defendant and against a plaintiff which a defendant pleads to diminish, defeat or otherwise affect a plaintiff's claim and also allows a recovery by the defendant.' " *Nickerson* v. *Martin*, 34 Conn. Sup. 22, 28, 374 A.2d 258 (1976); see *Williams* v. *Dumais*, 34 Conn. Sup. 247, 250, 385 A.2d 686 (1977); *Seligson* v. *Chase Manhattan Bank, National Assn.*, 50 App. Div. 2d 206, 376 N.Y.S.2d 899 (1975).

"locked in" as the majority concludes on the defendants' admission of paragraph 1 of the complaint. Yet, despite all this, the majority goes on to characterize the pleadings in a manner not even suggested by the trial court or the parties, either below or before us, and goes on to decide and dispose of the case on a theory not even suggested by the trial court or the parties, either below or before us, all without even suggesting that the trial court got to the right result but by the wrong route. The trial court apparently construed the pleadings in the light of the claim of the parties insofar as title necessary to entitle them to ownership and possession was concerned. We should dispose of this case on the theory upon which it was tried and on which the trial court decided it. *Machiz* v. *Homer Harmon, Inc.,* 146 Conn. 523, 525, 152 A.2d 629 (1959); *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 406, 409, 143 A.2d 448 (1958); Maltbie, Conn. App. Proc. § 42. We have done this, and not interfered, where the parties at trial adopted a certain construction of the pleadings. See, e.g., *Milardo* v. *Branciforte,* 109 Conn. 693, 695, 145 A. 573 (1929); *First National Bank* v. *Broder,* 107 Conn. 574, 580, 141 A. 861 (1928); *Ohlin* v. *Kowner,* 96 Conn. 394, 401, 114 A. 117 (1921); Maltbie, Conn. App. Proc. § 42.

In fairness to the litigants, it can be said that the determination of whether a claim is legal or equitable is an "elusive question," and it requires an appraisal of the basic nature of the issues presented, including the relief sought. *Flanigan* v. *Foley,* 20 Conn. Sup. 12, 119 A.2d 741 (1955); *Cyr* v. *Cote,* 396 A.2d 1013 (Me. 1979); *Portland Pipe Line Corporation* v. *Environmental Improvement Commission,* 307 A.2d 1 (Me.), appeal dismissed, 414 U.S. 1035, 94 S. Ct. 532, 38 L. Ed. 2d 326 (1973). It is crucial, however, to remember, as the majority have not, that "the constitu-

tional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen, Inc.* v. *Wood,* 369 U.S. 469, 477–78, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962). One court referring to *Dairy Queen* said that "the labels chosen by pleader do not control [the determination of whether a party is entitled to a jury trial]." *Prudential Oil Corporation* v. *Phillips Petroleum Co.,* 392 F. Sup. 1018, 1023 (S.D.N.Y. 1975). The elemental issues in this case are, according to everyone but the majority, ownership and possession. We have said that "[w]hen the title is in dispute, or doubtful, or has not been long enjoyed, or the possession is not in the complainant, equity will leave the parties to settle the title and possession at law . . . ." *Roy* v. *Moore,* 85 Conn. 159, 163, 82 A. 233 (1912).

In this case, in the trial court and in this court basically, without labels, "[t]he question involved was one of title, which ordinarily equity will not try; nor will it take property out of the possession of one and put it in the possession of another, but will leave the parties to settle their doubtful right first at law." *Welbrot* v. *Levenberg,* 98 Conn. 217, 222, 118 A. 911 (1922); see *Lacassagne* v. *Chapuis,* 144 U.S. 119, 124, 12 S. Ct. 659, 36 L. Ed. 368 (1892); *National Bank of Commerce of New London* v. *Howland,* 128 Conn. 307, 310, 22 A.2d 773 (1941); *Roy* v. *Moore,* supra, 162; *Robinson* v. *Robinson,* 73 Me. 170, 176 (1882); *Glickman* v. *Kastel,* 323 Mass. 148, 149–50, 80 N.E.2d 469 (1948); 1 High, Injunctions (2d Ed.) § 355. No one claims that the judgment, as well as the trial court's memorandum of decision, was not responsive to the relief sought, ownership and possession. See *Linahan* v. *Linahan,* 131 Conn. 307, 330, 39 A.2d 895 (1944). Would the majority, therefore, deny that had the trial court decided for the defendants and not the plaintiffs it would have found ownership and possession in the defendants? The

alacrity with which we properly protect the right to a jury trial on the criminal side should be no less zealously protected on the civil side.

The constitutional right to trial by jury cannot be abridged in those cases where the right existed when the 1818 constitution was adopted. *Gentile* v. *Altermatt,* 169 Conn. 267, 298–99, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Swanson* v. *Boschen,* 143 Conn. 159, 162, 120 A.2d 546 (1956); *La Croix* v. *County Commissioners,* 50 Conn. 321, 327 (1882). "The right to a jury trial of the issues of title and possession existed prior to the adoption of our Constitution, and hence exists now. *La Croix* v. *County Commissioners,* 50 Conn. 321, 327 [1882]." *Roy* v. *Moore,* supra, 167. The majority not only abridges this right but endorses its violation.

I dissent, and I would find error and remand for a new trial before a jury.

GRILLO, J. (dissenting). I concur in the dissenting opinion of Justice Healey and respectfully register my dissent for additional reasons.

The majority concedes that when legal title is the issue of fact, the issue as to the fact is triable by a jury. That *is* the issue in this case. It is not an "incidental" issue of fact as suggested by the majority and thus equitable in nature. The majority thereupon notes that the defendants admit to having conveyed a warranty deed. Such an allegation is not necessarily binding upon the trier and it may be disregarded. *Peiter* v. *Degenring,* 136 Conn. 331, 338, 71 A.2d 87 (1949). The entire pleadings and all the issues raised are to be examined and not merely one part of a party's pleadings. 47 Am. Jur. 2d, Jury § 39.